PETE RABEN, APPELLANT, V. HERMAN E. DITTENBER, APPELLEE.
434 N.W.2d 11

Filed January 13, 1989.   No. 87-257.

Michael J. Javoronok, of Holtorf, Kovarik, Nuttleman, Ellison, Mathis & Javoronok, P.C., and R.M. Van Steenberg, of Van Steenberg, Brower, Chaloupka, Mullin & Holyoke, P.C., for appellant.

Clark G. Nichols, of Winner, Nichols, Douglas, Kelly & Arfmann, P.C., for appellee.

BOSLAUGH, WHITE, CAPORALE, and SHANAHAN, JJ., and JAMES MURPHY, D.J.

WHITE, J.

This appeal arises from a civil action in the district court for Scotts Bluff County for damages for property damage and personal injuries sustained by the plaintiff-appellant in a motor vehicle accident. On October 29, 1984, at approximately 5 p.m., the defendant, Herman E. Dittenber, was driving his Mercury Grand Marquis automobile south on Nebraska Highway 29 in Sioux County from Harrison toward Mitchell. His wife, Marcella, was in the car seat beside him and her mother, Margaret Sleager, was in the back seat. The plaintiff, Pete Raben, driving a White Freightliner cab-over-engine pulling a potbellied stock trailer filled with cattle, was also traveling south on Highway 29, some distance behind the defendant's car. Charles Quay was following directly behind the plaintiff in a similar truck also owned by Raben. About 7 miles north of Mitchell, the defendant slowed to make a left turn at the intersection of Highway 29 and a county road. Approximately 200 yards north of the intersection, the plaintiff pulled his truck into the left-hand lane to pass the defendant's

vehicle. The defendant turned left, and the two vehicles collided.

In February and March of 1987, the case was tried before a jury. At the close of all the evidence, the court directed a verdict in favor of the defendant, stating that "reasonable minds could not differ in that the negligence of the plaintiff was, if not the sole cause of this accident, was far and away a proximate cause, and that that negligence was the cause of the accident." This appeal followed.

Plaintiff assigns three errors, claiming that the trial court erred (1) in directing a verdict for the defendant at the close of all the evidence; (2) in limiting the plaintiff's evidence concerning the condition of the intersection; and (3) in refusing to excuse passing at an intersection, when the intersection was not marked and the roadway was marked with a dotted line indicating that passing was permitted.

> In reviewing a directed verdict, the party against whom a motion for a direction of liability is made is entitled to have every controverted fact resolved in his or her favor and to have the benefit of every inference which can reasonably be drawn from the evidence. If there is any evidence which will sustain a finding for the party against whom the motion is made, the case may not be decided as a matter of law....

> A directed verdict is proper only where reasonable minds cannot differ and can only draw one conclusion from the evidence.... Where reasonable minds may draw different conclusions from the evidence, the question of negligence is for determination by the jury.

(Citations omitted.) *Mantz v. Continental Western Ins. Co.*, 228 Neb. 447, 450-51, 422 N.W.2d 797, 801 (1988).

The evidence adduced at trial shows that the plaintiff was in violation of Neb. Rev. Stat. § 39-625(1)(b) (Reissue 1988) when he attempted to pass the defendant within 100 feet of the intersection at the scene of the accident. Section 39-625(1) states that "[n]o driver shall overtake and pass another vehicle or drive to the left of the center of the roadway whenever: . . . (b) He approaches within one hundred feet of or traverses any intersection or railroad grade crossing."

It is the rule in Nebraska that the violation of a safety regulation, established by statute or ordinance, is not negligence as a matter of law, but is evidence of negligence which may be considered in connection with all the other evidence in the case in deciding that issue. Similarly, the violation of a statute is not negligence per se, but only evidence of negligence. . . . Therefore, violation of a statute or regulation . . . standing alone, is not sufficient to sustain a directed verdict . . . .

*Clark Bilt, Inc. v. Wells Dairy Co.*, 200 Neb. 20, 24, 261 N.W.2d 772, 775 (1978).

In *Hegarty v. Campbell Soup Co.*, 214 Neb. 716, 335 N.W.2d 758 (1983), the trial court initially denied the admission into evidence of a safety ordinance which defendant contended the plaintiff had violated and was relevant on the issue of contributory negligence. Later, the trial court determined that the ordinance was relevant and sustained the defendants' motion for a new trial on the ground that the court had erred in failing to admit the ordinance. This court, finding that the negligence of the defendant's driver was the proximate cause of the accident, held that the failure to admit or instruct upon the ordinance was harmless error. In so holding, we stated: "Failure to comply with the directives of the ordinance could only be evidence of contributory negligence to be considered by the jury in connection with other evidence bearing upon the issue. A failure to comply with the ordinance would not constitute contributory negligence per se." *Hegarty, supra* at 721, 335 N.W.2d at 762, citing *Clark Bilt, Inc. v. Wells Dairy Co., supra.*

*Piper v. Hill*, 185 Neb. 568, 177 N.W.2d 509 (1970), involved the issue of whether the plaintiff was guilty of contributory negligence when he violated Neb. Rev. Stat. § 39-757 (Reissue 1968) when he left his vehicle on the improved or maintained travel portion of the highway. We held that the defendant was not entitled to summary judgment on the basis that the plaintiff was guilty of contributory negligence by violating the statute. This court observed:

The substance of the defendant's argument is that our statute on parking or leaving standing any vehicle on the

improved or maintained traveled portion of a highway (section 39-757, R.R.S. 1943) applies and it is argued that it is conclusively established that the decedent was violating this statute. This same statute, of course, specifically exempts a disabled vehicle. But, even if it did not, in Nebraska the violation of a statute is not negligence per se but is evidence for the jury to consider in the determination of the ultimate issue of negligence or contributory negligence.

*Piper v. Hill, supra* at 571-72, 177 N.W.2d at 512.

As the above principles of law enumerate, violations of safety regulations such as § 39-625(1)(b), standing alone, are not sufficient to sustain a directed verdict. The violation is mere evidence of negligence, and the weight of that evidence is for consideration by the trier of fact. Therefore, is there sufficient evidence as a matter of law showing that plaintiff's negligence was more than slight in comparison with the defendant's negligence and, as such, the proximate cause of the accident? See, *Lynn v. Metropolitan Utilities Dist.*, 225 Neb. 121, 403 N.W.2d 335 (1987); *Bonnes v. Olson*, 197 Neb. 309, 248 N.W.2d 756 (1976).

Giving the plaintiff the benefit of every inference, and resolving every controverted fact in his favor, the record shows the following. Though the trial court restricted evidence on the condition of the intersection, an issue which will be addressed below, there is evidence which shows that the plaintiff was unaware of the fact he was attempting to pass at an intersection. Trooper George Siders of the Nebraska State Patrol, the officer who investigated the accident, testified on behalf of the plaintiff that this was the first intersection in 16 miles to travelers coming from the north and that the centerline continued to be marked by a dotted line in the middle of the road, indicating freedom to pass as long as the road was clear ahead. He further stated that there were no signs to indicate the existence of an intersection in the area.

Plaintiff also argues that because the markings on the pavement indicated freedom to pass while the statute on passing at an intersection prohibited it, there is a conflict in the law and his action should therefore be excused. We note that the

plaintiff has not introduced evidence of a regulation explaining the significance of lane markings, nor is there statutory authority for specific lane markings. It is a well-settled rule in Nebraska that state courts can take judicial notice of general rules and regulations established and published by federal agencies under authority of law. *Bohy v. Abbott*, 154 Neb. 139, 47 N.W.2d 95 (1951); *Keyser v. Allen*, 149 Neb. 449, 31 N.W.2d 309 (1948); *Powell v. Anderson*, 147 Neb. 872, 25 N.W.2d 401 (1946). Neb. Rev. Stat. § 84-906.05 (Reissue 1987) states:

> The filing of any rule or regulation pursuant to the Administrative Procedure Act, if certified and filed with the Secretary of State, shall be received as prima facie evidence of the existence of such rule or regulation and that such rule or regulation is as described in the permanent file copy of the Secretary of State. Any rule or regulation so certified and filed shall be admitted into evidence without further foundation.

That section provides support for holding that this court will take judicial notice of general rules and regulations established and published by Nebraska state agencies under authority of law. Pursuant to Neb. Rev. Stat. § 39-698 (Reissue 1988), the Nebraska Department of Roads appears to have adopted the Manual on Uniform Traffic Control Devices (1978), published by the U.S. Department of Transportation. 411 Neb. Admin. Code § 001.01 (1986). The law governing lane markings and defining the significance of the markings is set forth in the manual. The Nebraska Department of Roads has failed to file a copy of the manual with the Secretary of State as required by Neb. Rev. Stat. § 84-902 (Reissue 1987), which provides in pertinent part, "Each agency shall file in the office of the Secretary of State a certified copy of the rules and regulations in force and effect in such agency."

Not only was the trial court not supplied with a certified copy of an original regulation on file with the Secretary of State, indeed, there appear to be no regulations on file for the secretary to certify.

Although this court cannot say as a matter of law that there was a conflict between a statute and an agency regulation because of the defect in the record, common sense dictates that

the issue of the markings at the intersection could have affected the plaintiff's awareness of whether he was approaching an intersection, and is a factor for consideration by the jury in determining the weight of the plaintiff's negligence.

The record also indicates there is considerable dispute on whether the defendant had operated his left turn indicator prior to making the left turn. The plaintiff contends that the defendant never turned on his left turn signal. On direct examination, he testified as follows:

> A. . . . . [T]here was a car ahead of me that was slowing down and they looked like they were going to stop. And I — So I pulled over in the other lane and was going to go on down the road because it was clear and then as I got up alongside this car, then it — we — he turned and it hit, I hit him with the right corner of the bumper. And I was going to pull to the left ditch and my right wheel, front wheel locked, was evidently locked because I couldn't — it took both hands to pull and it kept going to the right with me and I tried to go to the left. And that — From there on I don't remember anything.
>
> Q. Okay. Pete, did you ever see a turn signal on the Dittenber car?
>
> A. No.

On cross-examination:

> Q. So you did see the brake lights go on as you came up behind the Dittenber car?
>
> A. Yes.
>
> Q. Did they go on and then go off again or did they remain on as long as you could remember?
>
> A. They went off.
>
> Q. Is that why you thought the car was stopped because the brake lights went off?
>
> A. Yes.
>
> Q. And you don't recall seeing any turn signals?
>
> A. No, sir.

In corroboration, Quay testified for the plaintiff that the defendant had failed to signal:

> Q. . . . . [W]hat happened?
>
> A. Well, we followed him for a ways then Pete turned

on his turn signals and started to go around the man. And when he got down there by the intersection they collided.

Q. Okay. Now, you were in the lane behind the Dittenber vehicle; is that right?

A. Yes, sir.

Q. And you were still in that lane after Pete pulled around to pass. Okay. What did you see on the back of his vehicle?

A. I never seen any lights of any kind on it.

On cross-examination:

Q. Now, you said that you didn't see any lights of any kind, were you in a position to see the back end of the Dittenber vehicle? Wasn't Pete's truck in front of you?

A. Yes.

Q. And that's why you didn't see any lights because his truck was between you and the Dittenber vehicle?

. . . .

A. After Pete got over the passing lane I had a good view of the car.

Q. And you didn't see any lights?

A. No, sir.

Q. No brake lights?

A. No brake lights or no turn signals.

Q. How far were you behind the Dittenber vehicle at that point?

A. Oh, I was still the same distance behind. I hadn't started picking up any speed until after Pete got around him.

Both Marcella Dittenber and Margaret Sleager, passengers in the defendant's car, said "no" when asked if they recalled whether or not the defendant had any turn signals on.

In rebuttal, the defendant testified that he put on his signal 200 yards prior to the intersection and that he knew it was on because it was his habit to turn it on. Further, the defendant produced an expert who had examined the left and right rear taillights on the defendant's car. Based on his observation of the filaments in the bulbs, the witness concluded that the defendant's left turn indicator was on at the time of the impact. However, on cross-examination, defendant's expert admitted

that the deformities in the filaments, which were the bases for his conclusion that the left turn indicator was on, could have been created by residual heat from the brake lights left over after the bulb had been turned off, thereby leading to the inference that the left-hand turn signal had not been operating at the time of the impact.

There was also evidence in the record showing the defendant's negligence. Trooper Siders testified as to an admission made by the defendant at the time of the accident:

> I asked him if he had observed the semi trucks or this one that hit him and he said that he had looked in his rear view mirror and they were far enough down the road, which would be north of him, that he would be able to make the turn in safety.

Yet, the defendant stated on cross-examination that he never saw the trucks. Also, despite the fact that his car was equipped with three mirrors, defendant admitted that he only looked in the center rearview mirror and did not look in either the left or right rearview mirror or over his left shoulder to see if the way was clear.

The record indicates too many areas of factual conflict to say as a matter of law that the plaintiff's negligence was more than slight in comparison with the defendant's negligence or that the plaintiff's negligence was the proximate cause of the accident.

With regard to plaintiff's second and third assignments of error, they relate to a motion heard by the court on February 27, 1987, outside of the presence of the jury. The plaintiff made an offer of proof:

> Trooper Siders would have testified that there was no way anyone would have of knowing that this was an intersection. There were no signs indicating an intersection even beyond what his testimony was, and that it was clearly marked that passing was indicated. His testimony, his actual testimony was that the dotted line in the roads indicate[s] passing. And we would have additional testimony from Pete Raben that he was not aware that this was an intersection, that the dotted lines indicated passing. He relied on those and we believe that the action of the state in placing these down on the road

has [led] Mr. Raben to be affirmatively [misled] as to what the rules of the road were at that particular location. We feel that Mr. Raben would also testify that he would not have passed if he knew it was an intersection and a violation of the rules of the road . . . .

. . . [I]t [the foregoing testimony] should be [admissible] and should be allowed because it goes to the weight and credibility of the type of evidence that is considered as the result of the violation of a statute. *In other words, the reasons for passing or the justification for doing what he did, even though it may have violated a statute, is much weaker evidence and this testimony be allowed, [than] it is by showing that he violated a statute without any cause.*

(Emphasis supplied.) The court rejected the offer of proof and ruled that it would limit the argument and restrict the evidence on the issue of "whether passing at an intersection should be evidence of negligence when the intersection is not marked and a dotted line indicates passing is permitted."

We agree with plaintiff's characterization of the issue. As mentioned above, violation of § 39-625 is evidence of negligence, but that still leaves unanswered the question of how much negligence should be attributed to that violation. This question goes directly to the determination of what weight the evidence should receive. "In our judicial system, it is entirely within the province of the jury to weigh the evidence and resolve the resulting conflicts." *Brewer v. Case*, 192 Neb. 538, 543, 222 N.W.2d 823, 827 (1974). Clearly, from an evidentiary standpoint not all violations of a statute are negligent to the same degree. For example, suppose the plaintiff had attempted to pass the defendant at an intersection which had been preceded by a sign marking a no-passing zone or dangerous intersection, with a solid yellow line painted on the middle of the road and a flashing caution light. It is obvious that one who passed at the intersection under these conditions would be more negligent than the plaintiff in the case at bar. When the trial court directed a verdict for the defendant after allowing the admission into evidence of the violation of the statute and, at the same time, restricting the admission of evidence concerning the circumstances relating to that violation, it was tantamount

to saying that the plaintiff was negligent per se or, in other words, that the violation of a statute, standing alone, is sufficient to sustain a directed verdict. This is in direct contradiction with the authorities cited above and is not the law in Nebraska.

Accordingly, we reverse the trial court's decision sustaining defendant's motion for a directed verdict and overrule the objection on the offer of proof. This cause is to be remanded for retrial, and the court will allow argument and evidence on the condition of the intersection.

REVERSED AND REMANDED WITH DIRECTIONS.