Nebraska Supreme Court Online Library
www.nebraska.gov/courts/epub/
03/04/2016 09:16 AM CST

Kristina A. Scheele, appellant, v.
Darrell Rains et al., appellees.
___ N.W.2d ___

Filed March 4, 2016.    No. S-15-130.

1. **Directed Verdict: Evidence.** A directed verdict is proper only when reasonable minds cannot differ and can draw but one conclusion from the evidence, that is, when an issue should be decided as a matter of law.

2. **Directed Verdict: Appeal and Error.** In reviewing a directed verdict, an appellate court gives the nonmoving party the benefit of every controverted fact and all reasonable inferences from the evidence.

3. **Jury Instructions: Proof: Appeal and Error.** In an appeal based on a claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant.

4. **Jury Instructions: Appeal and Error.** Failure to object to a jury instruction after it has been submitted to counsel for review precludes raising an objection on appeal absent plain error.

5. **Negligence: Evidence.** The violation of a regulation or statute is not negligence per se, but may be evidence of negligence to be considered with all the other evidence in the case.

6. **Appeal and Error: Words and Phrases.** Plain error is error uncomplained of at trial and is plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process.

Appeal from the District Court for Gage County: Daniel E. Bryan, Jr., Judge. Affirmed.

Peter C. Wegman, Mark R. Richardson, and Sheila A. Bentzen, of Rembolt Ludtke, L.L.P., for appellant.

Stephen S. Gealy and Noah J. Heflin, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., for appellees Delles Carrier, Inc., and Frank G. Lukach.

Stephen L. Ahl and Krista M. Carlson, of Wolfe, Snowden, Hurd, Luers & Ahl, L.L.P., for appellee Darrell Rains.

Heavican, C.J., Wright, Connolly, Miller-Lerman, Cassel, and Stacy, JJ.

Heavican, C.J.

## I. INTRODUCTION

Kristina A. Scheele sued Darrell Rains; Delles Carrier, Inc. (Delles); Frank G. Lukach; Sentry Insurance; and the Evangelical Lutheran Good Samaritan Society (Good Samaritan) for injuries she sustained in an automobile accident with a semi-trailer truck driven by Lukach. Following a trial, the jury found for the defendants. Scheele appeals. We affirm.

## II. BACKGROUND

### 1. Procedural Background

Scheele filed suit against Rains, Delles, Lukach, Sentry Insurance, and Good Samaritan for negligence. Sentry Insurance and Good Samaritan were included for workers' compensation subrogation purposes. Following a jury trial, special verdict forms were returned, finding that Scheele had not met her burden of proof as to the negligence of either Rains or Delles and Lukach.

### 2. Accident

The facts of this case are largely undisputed. Rains owns land along Highway 77 south of Beatrice, Nebraska. As it adjoins Rains' land, Highway 77 is a two-lane highway, with one northbound lane and one southbound lane. Rains was required, per the federal Conservation Reserve Program, to burn the vegetation off this field every 3 years.

The prescribed burn on this field and one other field was done on April 9, 2012. Rains first burned a nearby field, which was not located directly along Highway 77, during the morning of April 9. That burn went off without incident, but the burning of the second field did not.

The fire on the second field was set around 2:45 p.m. and initially burned as planned. But at some point, the wind shifted and smoke began to blow across Highway 77. Unable to control the fire, Rains called the fire department at approximately 3:19 p.m.

Meanwhile, Scheele had been in Beatrice on a work errand and was driving south on Highway 77, returning to her job at Good Samaritan in Wymore, Nebraska, when she came upon smoke that had drifted across the roadway from Rains' fire. Scheele was driving a 2004 Dodge Durango. She entered the smoke and testified that after doing so, the smoke became very thick. She slowed her speed, but drove on until she was forced to stop by a car ahead of her, which had come to a standstill. Scheele testified that she could see only the brake lights of the car ahead of her. She further testified that smoke was coming into her vehicle through the vehicle's vents and that she was afraid she was going to die.

Scheele testified that she wanted to get out of the smoke, but could not move because the car ahead of her had stopped. According to Scheele's testimony, she considered and rejected both backing up—because she knew there were cars behind her—and going onto the shoulder at her right—because she was afraid there would be flames there. Instead, Scheele inched slowly into the northbound lane to pass the car ahead of her. Scheele testified that she saw an oncoming vehicle and tried to edge back into the southbound lane, but collided with the car ahead of her before also colliding with a semi-trailer truck pulling an oversized load that was headed north in the northbound lane of traffic.

Scheele suffered injuries in the accident, including facial lacerations, a facial fracture, rib fractures, clavicle fractures,

and "pneumothorax." Scheele also suffered a closed head injury with a concussion, which ultimately evolved into a diagnosis of traumatic brain injury with "acquired attention deficit disorder."

### 3. Preparations for Setting Fire

Rains testified in detail regarding his preparations for setting the prescribed burn. Prior to the burn, Rains' son, Howard Rains (Howard), submitted a prescribed burn management plan to the U.S. Department of Agriculture Natural Resources Conservation Service. On the day of the burn, Rains obtained burn permits for each field from Bradley Robinson, the fire chief of the volunteer fire department in Blue Springs, Nebraska.

Prior to the burn, Rains cut a 30-foot strip of grass on the east and south sides of the field, essentially creating a firebreak. The grass was not raked, because Rains had not done so on prior burns and did not feel raking was necessary.

Rains, Howard, and Howard's 15-year-old son were going to handle the burn. It is undisputed that all three were present at the first burn, but that Howard was not present when the second fire was set. Rather, Howard was at the first field making sure that the fire there was fully extinguished. All three had cell phones to communicate. On hand were two all-terrain vehicles with 30- to 40-gallon water tanks and a tractor with a 100-gallon water tank. The three were also equipped with flat dirt shovels, rakes, and pitchforks. Rains had a bucket with water and a gunnysack to be used to smother flames if necessary. The backup plan was to call the fire department if the fire got out of control.

Rains testified that he decided to burn the fields on April 9, 2012, because it was a "nice day" without wind. He based this decision on personal observation and experience and from watching a televised weather report. Rains testified that Howard was checking the weather conditions throughout the day via an application on his cell phone. Howard also testified that he used his cell phone to check weather conditions.

Robinson testified that he checked the weather conditions using an online weather service before issuing the burn permits. Robinson also asked Rains to call him before burning the second field. Rains and Robinson both testified that Rains made this telephone call and that Robinson gave him permission to burn the second field. Robinson testified that he did so after again checking the weather conditions using an online weather service. On cross-examination, Robinson testified that he felt that he might not have had all the relevant facts and that he might not have issued the burn permits had he known a number of things.

Among the many issues Scheele had with the second burn was the issue of the relative humidity on April 9, 2012. Rains' burn plan indicated that a controlled burn should be done when the relative humidity was greater than 25 percent, but the relative humidity on April 9 never rose above 21 percent. Also at issue was the timing of the fire. The preprinted language on the burn plan noted that the optimum time to conduct a controlled burn was between 10 a.m. and 2 p.m., but this fire was not set until nearly 3 p.m. Scheele also contends that Rains did not have enough water on hand and that three people were insufficient to handle the burn when one of those persons was only 15 years of age and another was not present for the entire burn.

### 4. DELLES AND LUKACH

Lukach was the driver of the semi-trailer truck that collided with Scheele. At the time of the accident, he was driving an oversized load. In the investigation following the accident, Lukach was ticketed with several violations of the Federal Motor Carrier Safety Regulations, including not having proper warning flags for his load, having an inoperable electric horn, and driving when he did not have at least a half-mile of visibility.

Lukach testified that when he entered the smoke, he could see though it, but the smoke became more dense as he drove

on. As the smoke became dense, Lukach slowed down. Lukach testified that once he realized how thick the smoke was, he decided that he could not safely stop and so he continued through the smoke.

There is some dispute as to how fast Lukach was going. Lukach told the sheriff's deputy investigating the accident that he was "going about 50," but testified at trial that he meant 50 kilometers, or approximately 30 miles per hour. Lukach testified that he is Canadian and was shaken following the accident, so he did not convert his speed from the metric system. Lukach also testified that he could not have been going 50 miles per hour, because he downshifted his truck when he entered the smoke and could not have gone that fast after downshifting.

## 5. Corrected Jury Instruction

Following the presentation of evidence and closing arguments, the jury was instructed. The case was submitted to the jury at 12:20 p.m. on January 16, 2015. At 2:56 p.m., proceedings were held in chambers because of an error in the instructions dealing with contributory negligence. Counsel had not previously objected to this error.

Specifically, the jury had been instructed that "[i]f you find that both the Plaintiff Scheele and Defendant Rains and/or Defendant Delles/Lukach were negligent and that the negligence of Plaintiff Scheele was equal to or greater than the negligence of *either* Defendant Rains and/or Defendant Delles/Lukach, then Plaintiff Scheele will not be allowed to recover." (Emphasis supplied.)

But at a hearing held after the case was submitted to the jury, the parties agreed that the instruction should have provided that "[i]f you find that both Plaintiff Scheele and Defendant Rains and/or Defendant Delles/Lukach were negligent and that the negligence of Plaintiff Scheele was equal to or greater than the *combined* negligence of Defendant Rains and Defendant Delles/Lukach, then Plaintiff Scheele will not be allowed to recover." (Emphasis supplied.)

All counsel agreed to the change, and at 3:04 p.m., the correct instruction was read to the jury by the court, without counsel present. The jury was given a copy of the corrected language. The jury continued deliberations at 3:05 p.m., and returned with a verdict for the defendants at 3:34 p.m.

## III. ASSIGNMENTS OF ERROR

On appeal, Scheele assigns that the district court erred in (1) not entering a directed verdict for her and (2) giving conflicting versions of instruction No. 2.

## IV. STANDARD OF REVIEW

[1,2] A directed verdict is proper only when reasonable minds cannot differ and can draw but one conclusion from the evidence, that is, when an issue should be decided as a matter of law.[1] In reviewing that determination, we give the nonmoving party the benefit of every controverted fact and all reasonable inferences from the evidence.[2]

[3] In an appeal based on a claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant.[3]

[4] Failure to object to a jury instruction after it has been submitted to counsel for review precludes raising an objection on appeal absent plain error.[4]

## V. ANALYSIS

### 1. DIRECTED VERDICT

#### (a) Rains

Scheele assigns that the district court erred in not granting her a directed verdict as to Rains' negligence. She argues that

---

[1] *Balames v. Ginn*, 290 Neb. 682, 861 N.W.2d 684 (2015).

[2] *Id.*

[3] *InterCall, Inc. v. Egenera, Inc.*, 284 Neb. 801, 824 N.W.2d 12 (2012).

[4] *United Gen. Title Ins. Co. v. Malone*, 289 Neb. 1006, 858 N.W.2d 196 (2015).

Rains' action in starting the fire was negligent as a matter of law and suggests, without using this terminology, that Rains' failure to strictly comply with the burn management plan was negligence per se.

A directed verdict is proper only when reasonable minds cannot differ and can draw but one conclusion from the evidence.[5] In reviewing that determination, we give the nonmoving party, here Rains, the benefit of every controverted fact and all reasonable inferences from the evidence.[6]

[5] We first reject any contention that Rains' actions constituted negligence per se. This court has concluded on various occasions that the violation of a regulation or statute is not negligence per se, but may be evidence of negligence to be considered with all the other evidence in the case.[7] Thus, the fact that Rains did not comply with all aspects of the burn plan might be evidence of negligence, but is not in itself negligence.

And we cannot conclude that the district court erred in not directing a verdict in Scheele's favor with regard to Rains' alleged negligence. There was evidence that Robinson, the fire chief, gave Rains the go-ahead to set the fire which eventually led to the accident. There was other evidence that Rains filled out a burn plan and obtained a burn permit as required and that he and Howard were checking the weather. According to the evidence presented, Rains had done this before. He had created a firebreak near Highway 77. Three people were on hand, either onsite or nearby, to help handle the fire. Water and other fire suppression tools were available. Cell phones were available to contact the fire department, and once the fire was considered out-of-control, the fire department was contacted.

---

[5] *Id.*

[6] See *Balames v. Ginn, supra* note 1.

[7] See, *Orduna v. Total Constr. Servs.*, 271 Neb. 557, 713 N.W.2d 471 (2006); *Raben v. Dittenber*, 230 Neb. 822, 434 N.W.2d 11 (1989).

We agree that in this case, there was evidence to support the conclusion that Rains acted reasonably and there was evidence to support the opposite conclusion. In sum, reasonable minds could differ. But Rains must be given the benefit of every controverted fact and all reasonable inferences from the evidence. When we do so, we must conclude that it was not error for the district court to decline to direct a verdict and instead allow the jury to decide the issue.

### (b) Delles and Lukach

Nor did the district court err in not directing a verdict for Scheele against Delles and Lukach. Scheele argues that Lukach was negligent as a matter of law, and suggests that his "failure to stop, use extreme caution, or even slow down, so that he could come to a safe stop indisputably breached the duties he owed under Nebraska law, the Trip Permit, and [Federal Motor Carrier Safety] regulations."[8]

As noted above, we have held that the violation of a regulation or statute is not negligence per se, but may be evidence of negligence to be considered with all the other evidence in the case.[9] Given this, the fact that Lukach was found to have violated Federal Motor Carrier Safety Regulations should be considered along with the other evidence of negligence presented at trial.

And when we consider that evidence, and give Lukach the benefit of every controverted fact and all reasonable inferences from the evidence, we cannot conclude that a directed verdict was warranted. According to his testimony, when Lukach entered the smoke, he had the requisite visibility. Other evidence showed that Lukach kept his truck as far right as possible and slowed down to a speed of 30 miles per hour.

---

[8] Brief for appellant at 22.

[9] *Orduna v. Total Constr. Servs., supra* note 7; *Raben v. Dittenber, supra* note 7.

Again, while there was evidence that Lukach violated regulations, there was other evidence that under the circumstances, his actions were reasonable. Determination of such a factual dispute is not appropriate for resolution by directed verdict, and the district court did not err in declining to grant one for Scheele.

Scheele's first assignment of error is without merit.

## 2. JURY INSTRUCTION

[6] In her second assignment of error, Scheele assigns that the district court erred when it gave conflicting versions of instruction No. 2 to the jury. Because Scheele failed to object to the giving of the instruction, we review for plain error.[10] Plain error is error uncomplained of at trial and is plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process.[11] Scheele's argument is without merit.

We first note that Scheele relies on case law, including *Kaspar v. Schack*,[12] and *Krepcik v. Interstate Transit Lines*.[13] In both of these cases, the instructions as originally read to the jury included two separate, but conflicting, instructions. We held that "an instruction which misstates the law upon a vital issue is not cured by another which states the law correctly."[14]

In this case, though, the incorrect instruction was discovered after it was given, but before the jury returned with a verdict. The record shows that the parties agreed on a corrected instruction and that the jury was so instructed. Unlike *Krepcik*,

---

[10] See *United Gen. Title Ins. Co. v. Malone, supra* note 4.

[11] *Blaser v. County of Madison*, 285 Neb. 290, 826 N.W.2d 554 (2013).

[12] *Kaspar v. Schack*, 195 Neb. 215, 237 N.W.2d 414 (1976).

[13] *Krepcik v. Interstate Transit Lines*, 153 Neb. 98, 43 N.W.2d 609 (1950).

[14] *Kaspar v. Schack, supra* note 12, 195 Neb. at 220, 237 N.W.2d at 417. Accord *Krepcik v. Interstate Transit Lines, supra* note 13.

the jury was not presented with conflicting instructions and left to sort them out; rather, one incorrect instruction was replaced with a correct version.

Scheele's argument also fails because she cannot show, on these facts, that she was prejudiced by the giving of the incorrect instruction. The instruction in question regarded comparative negligence, but the jury found that Scheele did not meet her burden of proof as to the negligence of either Rains or Delles and Lukach. As such, the jury did not reach the question of Scheele's negligence.

This case is similar to *Bunnell v. Burlington Northern RR. Co.*[15] In *Bunnell*, the jury returned a special verdict for the defendant employer and the plaintiff employee appealed, alleging that the contributory negligence instruction was incorrect. We held that assuming the instruction was incorrect, it was harmless, because the jury never reached the issue of contributory negligence. And in this case, too, the jury returned special verdict forms for Rains and for Delles and Lukach, finding that Scheele failed to meet her burden of proof. Hence, any error by the court in giving an incorrect instruction was harmless.

Scheele's second assignment of error is without merit.

## VI. CONCLUSION
The judgment of the district court is affirmed.

AFFIRMED.

---

[15] *Bunnell v. Burlington Northern RR. Co.*, 247 Neb. 743, 530 N.W.2d 230 (1995).