JENNIFER J. MAXWELL, APPELLEE AND CROSS-APPELLEE, V.
KRISTY J. MONTEY AND MARVIN L. MONTEY, APPELLEES AND
CROSS-APPELLANTS, ZEBADIAH KAIN STEBBINS, APPELLANT,
AND DIANA LYNN STEBBINS, NATURAL PARENT OF
ZEBADIAH KAIN STEBBINS, APPELLEE.

631 N.W. 2d 455

Filed July 13, 2001.    No. S-99-708.

Stephen S. Gealy and Timothy E. Clarke, of Baylor, Evnen, Curtiss, Grimit & Witt, for appellant.

Stephen L. Ahl and Thomas B. Wood, of Wolfe, Snowden, Hurd, Luers & Ahl, for appellees Kristy J. Montey and Marvin L. Montey.

Herbert J. Friedman and Gregory R. Coffey, of Friedman Law Offices, for appellee Jennifer J. Maxwell.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

## NATURE OF CASE

Jennifer J. Maxwell filed a lawsuit against Kristy J. Montey (Montey) and her father, Marvin L. Montey, and Zebadiah Kain Stebbins (Stebbins) and his mother, Diana Lynn Stebbins, for injuries she sustained in an automobile accident. Maxwell alleged that Montey and Stebbins, who were minors at the time of the accident, were engaged in a speed contest when Montey's vehicle struck Maxwell's, thereby causing Maxwell injury. Maxwell's suit named Marvin Montey and Diana Stebbins as defendants under the family purpose doctrine. The district court granted Stebbins' motion for directed verdict at the close of Maxwell's case in chief, and the jury returned a verdict in favor of Maxwell and against the Monteys in the amount of $250,000. After trial, the district court granted Maxwell's motion for a new trial against Stebbins but denied the Monteys' motion for a new trial. Stebbins appealed, and the Monteys cross-appealed. Stebbins and Maxwell subsequently settled their dispute prior to oral argument in the Nebraska Court of Appeals. The Court of Appeals affirmed the judgment of the district court, and we granted the Monteys' petition for further review. We are left to decide the Monteys' appeal and the issues whether the district court erred in giving jury instructions on a speed contest and whether a new trial should have been granted with both the

Monteys and Stebbins as defendants so that the jury could allocate damages between them.

## BACKGROUND

Maxwell's operative petition alleged that Montey and Stebbins were racing in the eastbound lanes of O Street in Lincoln, Nebraska, on June 30, 1993, and that Montey's vehicle collided with Maxwell's vehicle while Stebbins' vehicle veered into the median of the street. Maxwell further asserted that the joint and several negligence of the defendants caused the accident which resulted in injuries to Maxwell's neck, shoulder, arm, and thoracic system. The Monteys and Stebbins answered and acknowledged that the accident occurred but denied that they were negligent and further alleged that Maxwell was contributorily negligent.

At the jury trial, Maxwell testified that she turned left from 48th Street into the eastbound lane of O Street in Lincoln. Maxwell stated that once she was eastbound on O Street, she noticed in her rearview mirror two cars in the eastbound lanes driving side by side and quickly approaching her. Maxwell testified that she was driving at a speed of about 35 miles per hour at the time and that she tapped her brakes so the drivers would see her in front of them. Maxwell then continued on her way, and when she looked in her mirror again, she noticed the vehicles were almost upon her, so she sped up to about 38 or 39 miles per hour. Maxwell testified that she realized the vehicles were approaching too rapidly, that they were side by side, and that the vehicle directly behind her could not move into the other lane in time. The vehicle which was traveling behind Maxwell, later identified as the Montey vehicle, struck Maxwell's vehicle. At this time, Maxwell says she turned her head to see the other vehicle, later identified as the Stebbins vehicle, go "whoosh" past her. Maxwell lost control of her vehicle and sustained injuries to her neck, shoulder, arm, and thoracic system.

During Maxwell's testimony, the district court repeatedly sustained foundational objections to questions asked by Maxwell's attorney as to the distance between Maxwell's vehicle and the Montey and Stebbins vehicles prior to the accident, as well as how fast Maxwell thought Stebbins' vehicle was traveling at the

time it passed her. However, Maxwell was allowed to testify that she thought Stebbins' vehicle was exceeding the speed limit when he passed her and that Stebbins "whooshed" past her.

Montey and Stebbins both testified that Maxwell had pulled out in front of them. Montey claimed that Maxwell turned onto O Street and, as a result, Montey did not have enough time to slow down before colliding with Maxwell's vehicle. Further, Montey testified that there was a car in the lane next to her which prevented her from moving into that lane and that she struck the rear of Maxwell's vehicle as a result. Stebbins' deposition testimony, which was read at trial, also indicated that Maxwell pulled in front of Montey and that he saw the accident in his rearview mirror. However, during Stebbins' live testimony at trial, he indicated that he did not pass Maxwell's car and did not see Maxwell's car at all until after he had passed Montey and after the accident happened.

At the close of Maxwell's case in chief, the district court granted Stebbins' motion for a directed verdict and excused him from the case. The Monteys did not object to Stebbins' motion or his dismissal. Additionally, the court admonished the jury to not speculate as to why Stebbins was no longer in the courtroom.

The Monteys presented their defense, and prior to submitting the case to the jury, the court conducted a formal jury instruction conference. Included in the jury instructions were instructions relating to a speed contest and verdict forms which included only Maxwell and the Monteys as parties to whom negligence could be allocated. Stebbins was neither mentioned in any of the jury instructions nor on any of the verdict forms. Additionally, in response to the district court's inquiry as to whether the Monteys had objections to any of the jury instructions, the Monteys did not object. The jury ultimately returned a verdict in favor of Maxwell and against the Monteys in the amount of $250,000.

In posttrial proceedings, the district court granted Maxwell's motion for a new trial against Stebbins because the district court found that it erred in directing a verdict in favor of Stebbins at the close of Maxwell's case in chief. The Monteys also made a motion for a new trial but did not specifically cite Stebbins' dismissal or the fact that the jury was not instructed to allocate damages between the Monteys and Stebbins as reasons for granting

the new trial. The Monteys did, however, specifically cite the jury instructions relating to a speed contest as a reason for granting a new trial. The district court denied the Monteys' motion.

The Monteys and Stebbins each filed documents styled "Motion for Clarification," requesting that the district court clarify whether the new trial granted to Maxwell against Stebbins was to include the Monteys and Stebbins as defendants. In the Monteys' filing, they requested a determination as to whether the Monteys and Stebbins would be included for apportionment purposes under the Nebraska comparative negligence statutory scheme. The district court held fast to its determination that the new trial would include Stebbins as the sole defendant and the Monteys would not be included in the trial. The court's reasoning was that the parties had not based their motions for new trial on the argument that the Monteys should be involved in the new trial for purposes of allocating damages.

Stebbins appealed and the Monteys cross-appealed the district court's decisions to the Court of Appeals. Prior to oral arguments, Stebbins and Maxwell settled their dispute and the Court of Appeals was left with the Monteys' appeal. On appeal, the Monteys assigned that the district court (1) erred in dismissing Stebbins from the trial, (2) erred in overruling the Monteys' motion for a new trial, (3) erred in granting Maxwell's motion for a new trial against only Stebbins, and (4) committed plain error in submitting a jury instruction on a speed contest after determining that no evidence existed on the issue.

The Court of Appeals affirmed the order of the district court in a memorandum opinion and judgment on appeal filed July 21, 2000. The court determined that the district court did not err in giving the jury instructions regarding a speed contest because the evidence supported the instruction. The court cited Maxwell's testimony that she saw the cars in her rearview mirror traveling side by side quickly approaching her and her testimony that Stebbins "whooshed" past her as enough evidence to support the instruction. The Court of Appeals then consolidated the Monteys' remaining assignments of error into one issue: Whether the Monteys were denied their right to have the jury allocate the liability between the Monteys and Stebbins under Nebraska's comparative negligence system. The court found

that "Montey does not have an unfettered right to include other joint tort-feasors in the case when the plaintiff pursues a claim under the first paragraph of § 25-21,185.10 . . . . For the same reason, Montey had no right to be included in the new trial between Maxwell and Stebbins." The Monteys subsequently filed a petition for further review, which we granted.

## ASSIGNMENTS OF ERROR

In their petition for further review, the Monteys assign, restated, that the Court of Appeals erred (1) in finding enough evidence of a speed contest to justify submitting jury instructions on a speed contest, (2) in finding that the Monteys are not entitled to a new trial involving them and Stebbins as defendants, and (3) in failing to find that Maxwell had failed in her burden of proving joint enterprise.

## STANDARD OF REVIEW

A motion for new trial is addressed to the discretion of the trial court, whose decision will be upheld in the absence of an abuse of that discretion. *Holmes v. Crossroads Joint Venture, ante* p. 98, 629 N.W.2d 511 (2001).

Whether a jury instruction given by a trial court is correct is a question of law. *McLain v. Ortmeier*, 259 Neb. 750, 612 N.W.2d 217 (2000).

## ANALYSIS

### JURY INSTRUCTIONS

We first address whether the district court erred in giving the jury instructions relating to a speed contest. In their petition for further review, the Monteys argue that it was plain error for the district court to give the jury instructions on a speed contest after the district court granted Stebbins' motion for directed verdict. The Monteys did not object to the speed contest instructions at trial despite being asked whether they had an objection to the specific instructions relating to a speed contest. Therefore, the Monteys properly point out that in order to reverse the district court's decision on the basis of its speed contest instructions to the jury, it is necessary for the district court to have committed plain error in so instructing the jury. Failure to object

to a jury instruction after it has been submitted to counsel for review precludes raising an objection on appeal absent plain error. *Nebraska Nutrients v. Shepherd*, 261 Neb. 723, 626 N.W.2d 472 (2001).

The Monteys complain of jury instructions which informed the jury that if the jury found that Montey had violated a Lincoln city ordinance prohibiting speed contests, it could take such violation into account when determining whether Montey was negligent. Specifically, jury instruction No. 2, which addressed Maxwell's claims against the Monteys and the burden of proof, stated, in part, the following:

> The plaintiff, Jennifer Maxwell, claims that the defendant, Kristy Montey, was negligent in one or more of the following ways:
>
> 1. Failing to keep a proper lookout;
>
> 2. Failing to keep her vehicle under reasonable control;
>
> 3. Driving in excess of the speed limit and in excess of that which is reasonable and proper; and
>
> 4. Participating in a speed contest.

Instruction No. 4 listed the contents of several Lincoln city ordinances and Nebraska statutes. One of the listed ordinances prohibited speed contests: "**10.14.270 Speed Contests.** (a) It shall be unlawful for any person to engage in or participate in any motor vehicle speed contest or exhibition of speed upon the streets of the city as the operator of a motor vehicle." Instruction No. 3 stated that if the jury found that Montey had violated a city ordinance, such violation would not necessarily prove negligence, but it would be evidence that the jury could consider in its deliberation.

The Monteys assert that Maxwell's testimony that she saw headlights in her rearview mirror and saw Stebbins' car "whoosh" past her was insufficient to warrant jury instructions regarding a speed contest. The Monteys assert that there needed to be evidence of the relative speeds of the vehicles before an instruction on speed contests could be given. Further, the Monteys complain that by giving the speed contest instructions, the district court allowed the jury to infer that Montey was involved in a speed contest while Stebbins, whose actions relating to a speed contest cannot be distinguished from Montey's

actions in this case, was dismissed from the case. Therefore, the Monteys claim that giving instructions relating to a speed contest constituted a miscarriage of justice.

Jury instructions should be confined to the issues presented by the pleadings and supported by the evidence. *Springer v. Bohling*, 259 Neb. 71, 607 N.W.2d 836 (2000). A jury instruction is not error if, taken as a whole, it correctly states the law, is not misleading, and adequately covers the issues. *Id.* Because of Maxwell's testimony that she saw the headlights in her rearview mirror, that the cars were side by side and quickly approaching, and that Stebbins "whooshed" past her, we find that the evidence adduced at trial supports the speed contest instructions. Stebbins' early dismissal from this case does not impact upon whether sufficient evidence was adduced at trial for a jury to infer that Montey was involved in a speed contest. Additionally, we note that after Stebbins was dismissed from the case, the district court admonished the jury to refrain from speculating as to why Stebbins was no longer in the courtroom. Further, Stebbins was neither referred to in any jury instructions nor referred to in the verdict forms.

We agree with the Monteys' assertion that by instructing the jury on a speed contest, the jury was able to infer that Montey had engaged in a speed contest—such was the purpose of the speed contest instructions. Because there was sufficient evidence adduced at trial to support the inference and, consequently, to support instructions on a speed contest, it was proper to allow the jury to make such an inference. Therefore, we find no plain error in instructing the jury on a speed contest. The Court of Appeals did not err in upholding the district court's decision to instruct the jury on a speed contest.

## NEW TRIAL

The Monteys' remaining arguments in their petition for further review essentially assert that there should be a new trial involving both the Monteys and Stebbins as defendants so that damages can be apportioned between them. First, the Monteys argue that they are entitled to an allocation of damages between them and Stebbins under Neb. Rev. Stat. § 25-21,185.10 (Reissue 1995). Section 25-21,185.10 states the following:

In an action involving more than one defendant when two or more defendants as part of a common enterprise or plan act in concert and cause harm, the liability of each such defendant for economic and noneconomic damages shall be joint and several.

In any other action involving more than one defendant, the liability of each defendant for economic damages shall be joint and several and the liability of each defendant for noneconomic damages shall be several only and shall not be joint. Each defendant shall be liable only for the amount of noneconomic damages allocated to that defendant in direct proportion to that defendant's percentage of negligence, and a separate judgment shall be rendered against that defendant for that amount.

We conclude that the Monteys cannot avail themselves of this section's allocation provisions in the case at bar.

■ In the absence of anything to the contrary, statutory language is to be given its plain and ordinary meaning; an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *Fontenelle Equip. v. Pattlen Enters., ante* p. 129, 629 N.W.2d 534 (2001). Section 25-21,185.10 is narrow in scope in that it addresses only a situation where there are multiple defendants in a lawsuit. Under § 25-21,185.10, it is possible, under certain circumstances, for multiple defendants to have a percent of noneconomic damages allocated to them by the finder of fact based on each defendant's percentage of negligence. However, under the plain language of § 25-21,185.10, there must first be multiple defendants in the case before the allocation provisions of § 25-21,185.10 will operate. Therefore, in situations where there is only one defendant remaining in a case, the provisions of § 25-21,185.10 simply do not operate.

■ We now address how to determine whether there are, in fact, multiple defendants in a case for purposes of § 25-21,185.10. In its application, § 25-21,185.10 only operates at the point when a finder of fact has determined the liability of the parties involved in a case and is apportioning damages between those parties. Because the statute's effect is on only the apportionment of damages between multiple defendants after

liability has been established, the proper timeframe to consider in determining whether there are, in fact, multiple defendants in a case is when the case is submitted to the finder of fact. In other words, if there is only one defendant in a particular case at the point the case is submitted to a jury, the jury will not be allowed to allocate a percent of damages or negligence to "phantom" defendants who have never been part or are no longer part of a proceeding. Again, only when there are multiple defendants in a case at the time the case is submitted to the finder of fact can there be the possibility of an allocation of damages between defendants under § 25-21,185.10.

In the instant case, Stebbins was dismissed from the case at the close of Maxwell's case in chief. After Stebbins was dismissed and, importantly, when the case was submitted to the finder of fact, there were only the Monteys as defendants. We observe that the Monteys did not timely preserve in the district court the issue whether Stebbins should have remained a part of the trial for apportionment purposes. The Monteys did not object to the district court's granting a directed verdict in favor of Stebbins, nor did the Monteys object to Stebbins' dismissal from the case. The Monteys' motion for new trial merely addressed the issue of jury instructions relating to a speed contest. In fact, the first time the Monteys raised the issue whether damages should be apportioned between the Monteys and Stebbins was in the Monteys' filing styled "Motion for Clarification." Any objection the Monteys could have raised in their filing styled "Motion for Clarification" would, at best, be likened to a motion for reconsideration, which is considered nothing more than an invitation to the court to consider exercising its inherent power to vacate or modify its own judgment. See *Kinsey v. Colfer, Lyons*, 258 Neb. 832, 606 N.W.2d 78 (2000). Such filing is insufficient for purposes of asking a trial court to pass upon an issue in order to properly preserve it for appeal.

Because the Monteys did not timely present the issue whether Stebbins should have remained a part of the litigation in the district court, we will not address such question on appeal. One cannot silently tolerate error, gamble on a favorable result, and then complain that one guessed wrong. *Lincoln Branch, Inc. v. City of Lincoln*, 245 Neb. 272, 512 N.W.2d 379 (1994). See,

*Martindale v. Weir*, 254 Neb. 517, 577 N.W.2d 287 (1998); *Wolfe v. Abraham*, 244 Neb. 337, 506 N.W.2d 692 (1993). Further, an appellate court will not consider an issue on appeal that was not presented to or passed upon by the trial court. *Claypool v. Hibberd*, 261 Neb. 818, 626 N.W.2d 539 (2001). In appellate proceedings, the examination by the appellate court is confined to questions which have been determined by the trial court. *Torres v. Aulick Leasing*, 258 Neb. 859, 606 N.W.2d 98 (2000).

The Monteys also seem to argue, in their petition for further review, that by granting Stebbins' motion for directed verdict, the district court prevented them from seeking contribution against Stebbins. With respect to claims of contribution between negligent joint tort-feasors against whom judgment has not yet been rendered, we have stated that a judgment debtor may pursue an action of contribution against those whom a plaintiff has successfully obtained a judgment against as well as those whose liability remains to be fixed. See *Northland Ins. Co. v. State*, 242 Neb. 10, 492 N.W.2d 866 (1992). We find the Monteys' argument unpersuasive.

Because we determine that the Monteys cannot avail themselves of the provisions of § 25-21,185.10, we do not reach the Monteys' assignment of error relating to whether they were involved in a joint enterprise under § 25-21,185.10 in this case.

## CONCLUSION

We conclude that the district court did not commit plain error by giving the jury instructions relating to a speed contest. Further, the Monteys were not entitled to an allocation of damages between them and Stebbins because the plain language of § 25-21,185.10 allows for only the possibility of allocation of damages between defendants when there are multiple defendants at the time the case is submitted to the finder of fact. For all of the reasons stated above, we affirm the judgment of the Court of Appeals.

AFFIRMED.