Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/18/2017 09:09 AM CDT

Sheena Ammon, Special Administrator of
the Estate of Patricia Cody, appellant,
v. Stephen Nagengast, M.D., and
General Surgery Associates,
LLC, appellees.

___ N.W.2d ___

Filed April 18, 2017.    No. A-15-1184.

1. **Jury Instructions: Appeal and Error.** Whether a jury instruction is correct is a question of law, which an appellate court independently decides.
2. **____: ____.** In an appeal based on a claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial and otherwise adversely affected a substantial right of the appellant.
3. **Negligence: Liability: Damages.** Generally, an act wrongfully done by the joint agency or cooperation of several persons, or done contemporaneously by them without concert, renders them liable for all damages, both economic and noneconomic, jointly and severally.
4. **Negligence: Tort-feasors: Liability: Damages.** Under joint and several liability, either tort-feasor may be held liable for the entire damage, and a plaintiff need not join all tort-feasors as defendants in an action for damages.
5. **Tort-feasors: Compromise and Settlement.** If a plaintiff settles with one of the jointly and severally liable tort-feasors, then the plaintiff's recovery against the remaining tort-feasors is reduced by the actual settlement amount.
6. **Parties: Time.** The proper timeframe to consider whether there are multiple defendants is when the case is submitted to the finder of fact.
7. **Tort-feasors: Liability: Damages.** Under the comparative fault statutory scheme in Nebraska, joint tort-feasors who are defendants in an action involving more than one defendant share joint and several liability to the claimant for economic damages.

8. **Tort-feasors: Compromise and Settlement: Liability.** When the claimant settles with a joint tort-feasor, the claimant forfeits that joint and several liability.

9. **Tort-feasors: Compromise and Settlement.** The claimant cannot recover from the nonsettling joint tort-feasor more than that tort-feasor's proportionate share in order to compensate for the fact that the claimant made a settlement with another that may prove to be inadequate.

10. **Jury Instructions: Pleadings: Evidence.** A litigant is entitled to have the jury instructed upon only those theories of the case which are presented by the pleadings and which are supported by competent evidence.

11. **Jury Instructions.** The general rule is that whenever applicable, the Nebraska Jury Instructions are to be used.

12. **Waiver: Appeal and Error.** Errors not assigned in an appellant's initial brief are waived and may not be asserted for the first time in a reply brief or during oral argument.

Appeal from the District Court for Otoe County: Jeffrey J. Funke, Judge. Affirmed.

Greg Garland, of Greg Garland Law, Tara DeCamp, of DeCamp Law, P.C., L.L.O., Kent A. Schroeder, of Ross, Schroeder & George, L.L.C., and Kathy Pate Knickrehm for appellant.

William L. Tannehill and John P. Weis, of Wolfe, Snowden, Hurd, Luers & Ahl, L.L.P., for appellees.

Moore, Chief Judge, and Inbody and Pirtle, Judges.

Pirtle, Judge.

### INTRODUCTION

Sheena Ammon, the special administrator of the estate of Patricia Cody, brought a medical malpractice action against Denise Husen Murry; Murry's employer, Sleep Tight Anesthesia, P.C.; St. Mary's Community Hospital; Stephen Nagengast, M.D.; and Nagengast's employer, General Surgery Associates LLC (GSA). Ammon alleged that the defendants were professionally negligent and that their joint and several acts proximately caused injury to and the death of her mother, Cody.

Prior to trial, the claims against several of the defendants were resolved by settlement. The case was tried to a jury, which returned a verdict in favor of the remaining defendants, Nagengast and GSA. Ammon timely appealed. Finding no reversible error, we affirm.

## BACKGROUND

The underlying facts of this case are not in dispute. Cody underwent a medical procedure to remove abdominal adhesions at St. Mary's Community Hospital in Nebraska City, Nebraska, on January 23, 2012. Nagengast, a board-certified general surgeon who has been licensed to practice medicine in Nebraska since 1991, was scheduled to perform the surgery.

A certified nurse anesthetist (CRNA), Murry, assisted Nagengast. Murry was employed as an independent practitioner at the time of the surgical procedure. Nagengast experienced "difficulty insufflating" Cody at the start of the laparoscopic procedure, and opted to change to an "open technique." Roughly 5 minutes into the procedure, Murry alerted Nagengast that Cody was doing poorly and that the procedure needed to be aborted.

Cody no longer had a pulse, and her condition did not improve once the "insufflation gas" was removed. Nagengast testified that he was not informed of any change in Cody's condition until she was in cardiac arrest. Oxygen was provided to Cody and the "advanced cardiac life support" protocol, including the administration of cardiopulmonary resuscitation (CPR), began immediately. The medical staff performed CPR for 15 minutes, and after Cody's cardiac status resumed, she was transferred to a hospital in Lincoln, Nebraska, where she died on January 24, 2012.

Ammon, the special administrator of Cody's estate, brought a medical malpractice action against Murry, Sleep Tight Anesthesia, St. Mary's Community Hospital, Nagengast, and GSA. Ammon alleged that Murry, Nagengast, and St. Mary's Community Hospital were professionally negligent and that

their joint and several acts proximately caused the injury to and the death of Cody.

On November 14, 2014, St. Mary's Community Hospital was dismissed from this action with prejudice. Prior to trial, Ammon, Murry, and/or Sleep Tight Anesthesia reached a confidential settlement agreement, and the claims against them were dismissed with prejudice. The only remaining parties at trial were Nagengast and GSA (hereinafter collectively appellees).

At trial, the issue before the jury was whether Nagengast was professionally negligent in "failing to place . . . Cody in the Trendelenburg position and the Durant's position upon being notified the laparoscopic procedure should be aborted."

Raymond J. Lanzafame, M.D., is a general surgeon licensed to practice medicine in the State of New York. Lanzafame's videotaped deposition was presented at trial, and the video and the deposition transcript were entered as exhibits. He testified that it would have been appropriate for Nagengast to reposition Cody in the Trendelenburg position and the Durant's position. The Trendelenburg position is "head down," relative to the patient's feet, and the Durant's position features the patient on her left side, or in the "left lateral decubitus" position. He testified that the purpose of repositioning the patient would be to release an "airlock [or] gas bubble" that could have accumulated in the heart, preventing the flow of blood into the pulmonary circuit. This would allow a bubble to rise to the top and allow gravity to move blood through the heart.

Lanzafame testified that after attempting to reposition the patient, if the situation warranted, it would be proper to institute the advanced cardiac life support protocol. Lanzafame testified that Nagengast did not follow this standard of care and that this breach directly caused Cody's injuries, the result of which was death by permanent brain damage due to lack of oxygen.

He testified that if Nagengast had known Cody's "end tidal" carbon dioxide level had dropped before the arrhythmia, it would have made a heart attack much less likely as the primary event. Lanzafame testified that information regarding a drop in end tidal carbon dioxide was not communicated by Murry to Nagengast and that this information would have aided Nagengast's diagnostic process.

Nagengast testified that at the time Cody was transferred to the hospital in Lincoln, the doctors had ruled out pneumothorax, but had not ruled out myocardial infarction, arrhythmia, pulmonary embolism, or venous air embolism. It is difficult to rule out these conditions in an emergency setting because the proper equipment is not available in an operating room. Nagengast testified that after seeing additional evidence and studies, which were not available at the time Cody was treated, he was able to rule out some of those causes. He testified that there was "no doubt in [his] mind that she died of a venous air embolism," which is a very rare, but recognized, complication related to the surgery he performed.

Nagengast stated that positional changes, such as placing the patient in the Durant's position, are to be used, unless the patient has had a cardiovascular collapse. He testified that when a patient is in cardiopulmonary arrest, even from a venous air embolism, it is recognized that "you should proceed with CPR and not positioning changes." The advanced cardiac life support protocol is used to treat myocardial infarction, ischemic arrhythmia, pulmonary embolism, or venous air embolism. Nagengast testified that he met the standard of care of a reasonable surgeon under the circumstances and that if he were placed in the same situation again, he would follow the same procedure he used with Cody.

Greg A. Fitzke, M.D., is a general surgeon practicing medicine in Lincoln. He became board certified in 2005, and he testified as an expert witness in this case. Fitzke opined that the most appropriate action under the circumstances was to initiate CPR, rather than positional changes, because Cody was

in cardiac arrest. He testified that, in his opinion, Nagengast provided the expected standard of care, in all respects, under the circumstances.

Ammon's counsel objected to jury instructions Nos. 2 and 24, and the objections were overruled.

Jury instruction No. 2 stated as follows:

## STATEMENT OF THE CASE—NEGLIGENCE
### I. Plaintiff's Claims
#### A. ISSUES

This is a medical malpractice or professional negligence action filed by Sheena Ammon, as Special Administrator of the Estate of Patricia Cody, deceased, against Stephen Nagengast, M.D. and General Surgery Associates, LLC ("GSA") arising out of a surgical procedure performed on Patricia Cody on January 23, 2012.

There are two Defendants in this lawsuit. The interests of Dr. Nagengast and GSA are the same. If you find in favor of one of them, you must find in favor of both of them. If you find against one of them, you must find against both of them.

Plaintiff claims that Defendant Dr. Nagengast was professionally negligent in the following way:

1. In failing to place Patricia Cody in the Trendelenburg position and the Durant's position upon being notified the laparoscopic procedure should be aborted.

Patricia Cody was pronounced deceased on January 24, 2012. Plaintiff claims Patricia Cody's death was a result of the alleged professional negligence and seeks a judgment against the Defendants for the damages which she alleges resulted from Patricia Cody's death.

Dr. Nagengast and GSA admit that Dr. Nagengast had a patient relationship with Patricia Cody and provided surgical treatment to Patricia Cody on January 23, 2012. They deny that Dr. Nagengast was negligent in his treatment of Patricia Cody and further deny that any alleged departure from the standard of care by him was a

proximate cause of her death or of the damages claimed. Dr. Nagengast and GSA claim that Dr. Nagengast acted in a reasonable manner and in full compliance with all appropriate standards of care. They also denied the nature and extent of Plaintiffs damages.

### B. BURDEN OF PROOF

Before the Plaintiff can recover against Dr. Nagengast and GSA, Plaintiff must prove, by the greater weight of the evidence, each and all of the following:

1. That Dr. Nagengast was professionally negligent in one or more of the ways claimed by the plaintiff.

2 That any such professional negligence of Dr. Nagengast was a proximate cause of decedent's death.

3. That the death of the decedent was a proximate cause of some damage to her "next of kin"; and

4. The nature and extent of any pecuniary losses sustained by the "next of kin" as a result of the decedent's death. "Next of kin" is defined for you in Instruction No. 11.

### C. EFFECT OF FINDINGS

1. If the Plaintiff has not met her burden of proof with respect to the Defendants, then your verdict must be for the Defendants, and you will use Verdict Form No. 1 (in favor of Dr. Nagengast and GSA).

2. If the Plaintiff has met her burden of proof with respect to the Defendants, then you must consider the defendant's affirmative defense.

### Defendant's Defense
### A. Issues

In defense of Plaintiff's claim, Defendants allege that if any negligence occurred, it was committed by Denise Murry, CRNA, in the performance of the surgical procedure in the following way:

1. Failing to inform Dr. Nagengast that Patricia Cody's end tidal $CO_2$ dropped prior to Patricia Cody experiencing cardiac arrhythmias.

### B. Burden of Proof

In connection with Defendants' claim that Denise Husen (Murry), CRNA, was negligent, the burden is upon the defendants by the greater weight of the evidence to prove both of the following:

1. That Denise Husen (Murry), CRNA, was negligent in one or more ways claimed by the defendants;

2. That this negligence on the part of Denise Husen (Murry), CRNA, was a proximate cause of plaintiff's damages.

### C. EFFECT OF FINDINGS

1. If the plaintiff has met her burden of proof and the defendant has not met his burden of proof, then your verdict must be for the plaintiff.

2. If the Plaintiff <u>has</u> met her burden of proof with respect to the Defendants and the Defendants have <u>not</u> met their burden of proof with respect to Denise Husen (Murry), CRNA, then you must use Verdict Form No. 2.

3. If the Plaintiff <u>has</u> met her burden of proof with respect to the Defendants and the Defendants <u>have</u> met their burden of proof with respect to Denise Husen (Murry), CRNA, then you must use Verdict Form No. 3 allocating their negligence.

(Emphasis in original.)

Jury instruction No. 24 explained how the jury would calculate damages if the jury determined the damages should be allocated between appellees and Murry.

The jury returned a unanimous verdict for appellees, using verdict form No. 1. Ammon timely appealed.

### ASSIGNMENT OF ERROR

Ammon asserts:

The trial court erred by submitting Instructions number[s] 2 and 24 and Verdict Forms 2 and 3 to the jury concerning the negligence of Husen (Murry) and apportionment of damages and in failing to properly instruct the

jury concerning [Appellees'] negligence relative to their defense that [Cody's] injuries and damages were the proximate result of the actions or in-actions of others over whom they had no control.

## STANDARD OF REVIEW

[1] Whether a jury instruction is correct is a question of law, which an appellate court independently decides. *RM Campbell Indus. v. Midwest Renewable Energy*, 294 Neb. 326, 886 N.W.2d 240 (2016).

[2] In an appeal based on a claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial and otherwise adversely affected a substantial right of the appellant. *Scheele v. Rains*, 292 Neb. 974, 874 N.W.2d 867 (2016).

## ANALYSIS

Ammon argues the trial court erred in submitting jury instructions Nos. 2 and 24, as well as verdict forms Nos. 2 and 3 to the jury. However, we note that verdict forms Nos. 2 and 3 were not included in the record. Only verdict form No. 1 is found in the record presented to us in this appeal. Citing Neb. Rev. Stat. § 25-21,185.10 (Reissue 2016) and *Maxwell v. Montey*, 262 Neb. 160, 631 N.W.2d 455 (2001), Ammon asserts that only one defendant remained at the time the case was submitted to the jury and that the jury should not have been permitted to allocate a percent of damages or negligence to the defendants who were no longer part of the proceedings. She asserts that because appellees were the only remaining defendants when the case was submitted to the jury, the instructions regarding an allocation of negligence to Murry and Sleep Tight Anesthesia incorrectly stated the law and were misleading. We disagree.

Ammon's only assignment of error relates to the appropriateness of the jury instructions provided in this case and, more specifically, to whether Murry's negligence should have

been submitted to the jury under any circumstance. However, to be able to determine whether the court erred in giving instructions regarding the allocation of negligence, we must examine the applicability of the comparative fault statutes governing joint and several liability in civil actions.

[3-5] The Nebraska Supreme Court has considered the applicability of § 25-21,185.10 and Neb. Rev. Stat. § 25-21,185.11 (Reissue 2016) in situations similar to the circumstances of this case. Generally, under Nebraska common law, an act wrongfully done by the joint agency or cooperation of several persons, or done contemporaneously by them without concert, renders them liable for all damages, both economic and noneconomic, jointly and severally. *Tadros v. City of Omaha*, 273 Neb. 935, 735 N.W.2d 377 (2007). Under such joint and several liability, either tort-feasor may be held liable for the entire damage, and a plaintiff need not join all tort-feasors as defendants in an action for damages. *Id.* Also, in accordance with the underpinnings of joint and several liability, our common law follows the traditional rule that if the plaintiff settles with one of the jointly and severally liable tort-feasors, then the plaintiff's recovery against the remaining tort-feasors is reduced by the actual settlement amount. *Id.*

[6] Ammon argues that the provisions of § 25-21,185.10 are inapplicable because there was only one defendant in this case at the time the case was submitted to the jury. In *Maxwell v. Montey, supra*, the Nebraska Supreme Court explained that if the action does not involve multiple party defendants, then § 25-21,185.10 is not applicable. The proper timeframe to consider whether there are multiple defendants is when the case is submitted to the finder of fact. See *id.* Because Murry was no longer a defendant in Ammon's action at the time the case was submitted to the jury, we agree that § 25-21,185.10 is inapplicable to the question of apportionment of liability between appellees and Murry. However, unlike in *Maxwell v. Montey, supra*, Murry was not merely dismissed as a party—she was dismissed pursuant to a settlement agreement.

In *Tadros v. City of Omaha, supra*, the Nebraska Supreme Court determined that § 25-21,185.11 abrogated common law with regard to the apportionment of liability between a party defendant joint tort-feasor and a nonparty settling tort-feasor.

Section 25-21,185.11 states in full:

> (1) A release, covenant not to sue, or similar agreement entered into by a claimant and a person liable shall discharge that person from all liability to the claimant but shall not discharge any other persons liable upon the same claim unless it so provides. The claim of the claimant against other persons shall be reduced by the amount of the released person's share of the obligation as determined by the trier of fact.
>
> (2) A release, covenant not to sue, or similar agreement entered into by a claimant and a person liable shall preclude that person from being made a party or, if an action is pending, shall be a basis for that person's dismissal, *but the person's negligence, if any, shall be considered* in accordance with section 25-21,185.09.

(Emphasis supplied.)

We note that Neb. Rev. Stat. § 25-21,185.09 (Reissue 2016) dictates the effect that a claimant's contributory negligence has on the claimant's recovery. There was no allegation of any contributory negligence chargeable to Cody, so § 25-21,185.09 is not applicable to this case.

Ammon asserts that Neb. Rev. Stat. §§ 25-21,185.07 to 25-21,185.12 (Reissue 2016), the statutes which govern civil actions to which contributory negligence is a defense, apply only to cases in which contributory negligence of the *claimant* is at issue. She argues that because Cody's negligence was not at issue, these statutes, specifically § 25-21,185.11(2), do not apply in this case.

Traditionally, contributory negligence is defined as "[a] plaintiff's own negligence that played a part in causing the plaintiff's injury . . . ." Black's Law Dictionary 1196 (10th ed. 2014). However, it also can be defined as "[t]he negligence of

a third party — neither the plaintiff nor the defendant — whose act or omission played a part in causing the plaintiff's injury." *Id*. at 1197. In this case, appellees asserted the negligence of a settling third-party tort-feasor as a defense; thus, this is a "civil action to which contributory negligence was asserted as a defense," and the provisions of the comparative fault statutes, including § 25-21,185.11, are applicable.

As reflected above, § 25-21,185.11(1) plainly states that after the claimant settles with a joint tort-feasor, the claims against other persons "shall be reduced by the amount of the released person's share of the obligation as determined by the trier of fact."

[7-9] Under the comparative fault statutory scheme in Nebraska, joint tort-feasors who are "'defendants'" in an action "'involving more than one defendant'" share joint and several liability to the claimant for economic damages. See *Tadros v. City of Omaha*, 273 Neb. 935, 941, 735 N.W.2d 377, 382 (2007). But, when the claimant settles with a joint tort-feasor, the claimant forfeits that joint and several liability. *Id.* The claimant cannot recover from the nonsettling joint tort-feasor more than that tort-feasor's proportionate share in order to compensate for the fact that the claimant made a settlement with another that may prove to be inadequate. *Id.*

The "Special Note" which follows NJI2d Civ. 2.01 provides guidance to us in this case and states in part:

(§ 25-21,185.10 does not operate until the finder of fact has determined liability and is apportioning damages; "Because the statute's effect is on only the apportionment of damages between multiple defendants after liability has been established, the proper timeframe to consider in determining whether there are, in fact, multiple defendants in a case is when the case is submitted to the finder of fact"; *presumably, the just quoted rule does not apply when at least one defendant has been discharged from a lawsuit by a release, a covenant not to sue, or a similar agreement entered into by a claimant and a*

*person liable; all of this is discussed further at NJI2d Civ. 5.04, Comment*).
(Emphasis supplied.)

In the comment to NJI2d Civ. 5.04, the following appears:

### VII. HOW DAMAGES ARE APPORTIONED WHEN THERE WAS MORE THAN ONE TORTFEASOR BUT THERE IS ONLY ONE DEFENDANT IN THE CASE WHEN IT IS SUBMITTED TO THE TRIER OF FACT.

. . . .

For purposes of the application of Nebraska's comparative negligence statute, there are two ways this can occur, each with a different solution. There are two different ways to handle this situation, two different ways the trier of fact must be instructed, depending how the situation has arisen.

The first jury-instruction situation itself arises either when there was only ever one putative joint tortfeasor in the case or when there was more than one but all but the one remaining were dismissed for reasons of pleading or proof [(e.g., failure to state a cause of action, failure to prove a prima facie case, etc.)] (This was the situation in Maxwell v. Montey, 262 Neb. 160, 631 N.W.2d 455 (2001).) In this case, the applicable statutory section is Neb.Rev.Stat. § 25-21,185.10 (Reissue 2008). *In this situation, no instruction on apportionment of damages is called for (or allowed).*

The second jury-instruction situation arises when there was more than one putative joint tortfeasor in the case—either because the claimant originally sued or later brought into the case more than one alleged joint tortfeasor or a defendant brought other putative joint tortfeasors into the case—*and all but the one remaining alleged tortfeasor have been dismissed from the case pursuant to a release, covenant not to sue, or similar agreement. This includes the putative tortfeasor dismissed pursuant to a*

*settlement with the plaintiff.* (This was the situation in Tadros v. City of Omaha, 273 Neb. 935, 942, 735 N.W.2d 377, 381 (2007).) *In this case, the applicable statutory section is Neb.Rev.Stat. § 25-21,185.11 (Reissue 2008). In this situation, jury instruction on apportionment of damages is required.*

(Emphasis supplied.)

In this particular case, the jury was instructed to determine whether Nagengast was professionally negligent in "failing to place . . . Cody in the Trendelenburg position and the Durant's position upon being notified the laparoscopic procedure should be aborted." If the jury found that Ammon had not met her burden of proof with respect to appellees, verdict form No. 1 was to be used. If the jury found that Ammon met her burden of proof with respect to appellees, then the jury was instructed to consider appellees' affirmative defense that "if any negligence occurred, it was committed by . . . Murry" for failing to provide information to Nagengast that would have assisted him in diagnosing and treating Cody's complications during the surgical procedure.

The jury was instructed to use verdict form No. 2 if it found Ammon had met her burden of proof with respect to appellees, and appellees failed to meet their burden of proof with respect to Murry. The jury then was instructed to use verdict form No. 3 if Ammon met her burden of proof with respect to appellees and appellees met their burden with respect to Murry.

Because § 25-21,185.11 mandates reduction by the settling tort-feasor's proportionate share of liability as determined by the trier of fact, the court did not err in allowing the jury to allocate negligence between appellees and Murry if the jury determined that Ammon had met her burden of proof with regard to appellees.

Ammon also asserts the trial court erred in providing instruction No. 24, which explained how the jury should total the amount of damages *if* the jury determined Cody's

damages were caused by both Nagengast and Murry. From the outset of the case, Ammon asserted that Murry was negligent in the performance of her professional duties during Cody's procedure. However, at the time of trial, Ammon argued that language related to Murry was misleading and prejudicial. The trial court overruled Ammon's objection to instruction No. 24.

The court determined that an allocation instruction regarding Nagengast's alleged negligence compared to Murry's alleged negligence was warranted. The court recognized the obligation to correctly instruct the jury and give adequate instructions to explain the effects of an allocation of negligence. The court specifically stated:

> The Court, in reviewing the evidence — there's been evidence presented, first that . . . Murry . . . was a defendant in a case that was released and dismissed prior to trial and before this case is submitted to the trier of fact. The Court believes, as a result of that, that may entitle an issue of allocation. The Court believes that the evidence presented in, specifically, Dr. Lanzafame's testimony and Dr. Nagengast's testimony is that they would have expected, as the surgeon in charge of the OR, to be told positive findings, such as a drop in end-tidal $CO_2$, and that would have been a relevant factor to be made aware of and may have had some impact on how they proceeded in — Dr. Nagengast proceeded in treating . . . Cody.

The evidence shows that Nagengast and Murry had worked together professionally and that they were expected to share information vital to the treatment of the patient. Nagengast testified that he relied on Murry to provide him with necessary information without being asked.

Ammon's own expert witness, Lanzafame, testified that, based upon his review of the evidence, Murry did not communicate information to Nagengast that would have been helpful in diagnosing the complications Cody experienced during

the surgical procedure. Lanzafame was asked whether the two healthcare providers, Nagengast and Murry, misdiagnosed the issue that Cody experienced, and he opined that "they" misdiagnosed the cause of Cody's "emergent issue." Lanzafame testified that in his personal experience, he had relied upon his participating anesthetist to communicate a patient's drop in carbon dioxide levels and stated that this information is important to properly treat a patient.

Prior to the close of Ammon's case, appellees' counsel made an offer of proof regarding "allocation against a released and dismissed defendant, under Nebraska Revised Statute § 25-21,185.11," and Ammon's counsel agreed, without objection. As a result, it would appear that Ammon settled her case with a joint tort-feasor, with the knowledge that an issue of allocation of negligence would be forthcoming before the end of the trial.

[10,11] A litigant is entitled to have the jury instructed upon only those theories of the case which are presented by the pleadings and which are supported by competent evidence. *RM Campbell Indus. v. Midwest Renewable Energy*, 294 Neb. 326, 886 N.W.2d 240 (2016). Given the pleadings, Ammon's allegations of professional negligence by Nagengast and Murry, and the evidence and testimony presented at trial, an instruction regarding the potential allocation of negligence was warranted. We find the trial court correctly instructed the jury (over Ammon's objections), including jury instructions Nos. 2 and 24, all of which appear to have been taken directly from the Nebraska pattern jury instructions. The general rule is that whenever applicable, the Nebraska Jury Instructions are to be used. *In re Estate of Clinger*, 292 Neb. 237, 872 N.W.2d 37 (2015).

Further, and perhaps most importantly, at the conclusion of their deliberations, the jury unanimously entered its verdict using verdict form No. 1, finding Ammon had not met her burden of proof against appellees, thereby finding in favor of appellees. Even if jury instructions Nos. 2 and 24 were given

in error, Ammon cannot show, on these facts, that she was prejudiced by the instructions, because the jury found Ammon had failed to prove her underlying case against appellees. Thus, the jury never reached the issue of comparative fault and verdict forms Nos. 2 and 3 were not used. Hence, any error by the court in giving instructions Nos. 2 and 24, and in allowing the jury to consider verdict forms Nos. 2 and 3, was harmless.

[12] Finally, during oral argument, Ammon's counsel asserted that because there were no opinions offered by any expert witness regarding a breach of the applicable standard of care by Murry, there could be no basis to determine her negligence. Although this argument was made in Ammon's reply brief, it was not assigned as error nor was it argued in Ammon's initial brief filed in this appeal. Errors not assigned in an appellant's initial brief are waived and may not be asserted for the first time in a reply brief or during oral argument. See *Genetti v. Caterpillar, Inc.*, 261 Neb. 98, 621 N.W.2d 529 (2001).

## CONCLUSION

We affirm the decision of the district court, entering an order of judgment in favor of appellees, pursuant to the jury verdict rendered in this case.

AFFIRMED.