IN RE ARBITRATION OF NELS JOHNSON ET AL.

NELS JOHNSON ET AL., APPELLANTS, V. MONS JOHNSON, APPELLEE.

FILED JUNE 29, 1910.   No. 16,095.

1. Appeal: AWARD: PRESUMPTIONS. In reviewing a judgment on an award of arbitrators, every presumption is in favor of the award.

2. Arbitration and Award: FINDINGS. Arbitrators are not required to make their findings more certain than juries.

3. ———: ———: WAIVER. Failure of arbitrators to state the facts found and the conclusions of law, separately, is a mere irregularity which the parties may waive.

4. ———: ———: ———. By failing to ask the court to recommit an award to the arbitrators for corrected or additional findings, a party to the arbitration may waive such irregularities.

5. ———: ———: SUFFICIENCY. A general finding by arbitrators is sufficient, where special findings are not required by the submission or requested by a party to the arbitration.

6. ———: DIVISION OF ESTATE: AWARD FOR MONUMENT. An award directing an executor to expend $300 for a monument is within the terms of a submission asking the arbitrators to determine what, in their judgment, would be a fair, just and equitable division of testator's personalty, and containing an agreement not to contest a will making provision for a monument not costing over $500.

7. Appeal: QUASHING BILL OF EXCEPTIONS: REVIEW OF EVIDENCE. After a bill of exceptions has been quashed the record presents no question as to the sufficiency of the evidence or the effect of incompetent testimony.

8. Arbitration and Award: WILLS: SUBJECTS OF ARBITRATION. The disputed ownership of land included in a devise, the invalidity of a will offered for probate and the distribution of testator's estate, in view of an agreement not to contest the will, are subjects of arbitration under a code declaring that "all controversies

which might be the subject of civil actions may be submitted to the decision of one or more arbitrators." Code, sec. 862.

9. ——: Heirloom. An award that any heirloom found among the personal property of testator shall be appraised at a fair value and sold to any one of the heirs desiring possession of it, *held* not open to the objection of being neither final nor complete.

Appeal from the district court for Dodge county: George H. Thomas, Judge. *Affirmed.*

*Allen Johnson* and *F. Dolezal,* for appellants.

*George L. Loomis* and *H. C. Maynard, contra.*

Rose, J.

This is an appeal from a judgment confirming and enforcing an award of arbitrators. The submission under which the award was made contained the following provisions:

"This agreement made and entered into this second day of May, 1907, by and between Nels Johnson, Ola Johnson, Mons Johnson, Hannah Nelson and John Sampson, witnesseth: Whereas, John Monson, formerly a resident of Dodge county, Nebraska, died testate therein on the 15th day of February, 1907, being the father of said Nels Johnson, Ola Johnson, Mons Johnson and Hannah Nelson, and the father-in-law of said John Sampson, the surviving husband of a deceased daughter, Mary Johnson; and whereas, said John Monson died possessed of certain personal property, consisting largely of money and notes, and also holding in his own name the legal title to the following described real estate in Dodge county, Nebraska, to wit: The south $\frac{1}{2}$ of the southwest $\frac{1}{4}$ in section 26, and the northeast $\frac{1}{4}$ of the northwest $\frac{1}{4}$ in section 35, all in township 20, range 8 east; and Whereas, said John Monson during his lifetime executed three certain instruments, each described as his last will and testament, and bearing date respectively, October 13, 1887; February 21, 1898,

and September 5, 1906, the last of which said instruments has been filed in the county court of Dodge county, Nebraska, with a petition praying that the same be admitted to probate as the last will and testament of said John Monson, deceased, and that the said Nels Johnson be appointed executor thereof, which said petition is now pending in said court. A copy of each of said instruments is hereto attached; and Whereas, a controversy has arisen between the parties hereto, with reference to the personal property of said John Monson, deceased, and with reference to the said instrument so as aforesaid filed in said county court as his last will and testament, and as to whether the same should or should not be admitted to probate, and also as to the equitable ownership of the real estate above described, and of the actual estate and interest therein of the said John Monson, deceased, and of the true, actual and equitable interest therein, if any, of the said Mons Johnson, who claims to be the equitable and real owner thereof, and that the legal title thereto was held in trust for him by the said John Monson, and as to whether said real estate is in fact a part of the estate of said John Monson, deceased, or whether the same rightfully belongs to said Mons Johnson; and Whereas, said controversy may be the subject of civil actions, and of litigation between the parties hereto, unless same can be otherwise settled and determined: Now, therefore, for the purpose of avoiding all litigation over said real estate and said personal property, and said instrument purporting to be the last will and testament of said John Monson, deceased, it is hereby mutually agreed by and between all the parties hereto, as follows, to wit:

"1. That said controversy and all differences between the parties hereto in reference to said real estate, personal property and instruments shall be, and the same hereby are referred to the following persons as arbitrators, to wit: A. E. Tunberg, John Johnson and John Ring.

"2. Said arbitrators shall consider and determine with reference to said real estate hereinbefore described,

whether the same was in fact owned by said John Monson at the time of his decease in fee, and free and clear from all interest therein, or claim thereto, on the part of said Mons Johnson, or whether said Mons Johnson, during the lifetime of said John Monson, had any rights or interests in said real estate, and if so what they were; and herein they shall consider and determine who furnished the money, or any part thereof, with which said real estate was purchased and paid for, why title to same was taken in John Monson and what, if any, understanding or agreement there was between said John Monson and Mons Johnson as to said real estate and the ownership thereof, how title thereto should be held, and who was the actual and equitable owner thereof, and the true intent and purpose of said parties with reference thereto.

"3. Said arbitrators shall consider and determine with reference to the personal property of which said John Monson died seized, and with reference to said instrument so as aforesaid filed for probate in the county court of Dodge county, Nebraska, as the last will and testament of said John Monson, deceased, whether said instrument provides for a fair, just and equitable disposition of the personal property and estate of said John Monson, between the parties hereto and they shall find and determine what in their judgment would be a fair, just and equitable division of said personal property and estate between the parties hereto in view of all the facts and circumstances, and the rights and equities of said parties in the premises, as the same may be known to them or disclosed by the evidence. And it is agreed by and between all parties hereto that said instrument so filed in the county court of Dodge county shall be admitted to probate as the last will and testament of said John Monson, deceased, and that the property disposed of by said will shall be by the executor thereof distributed and paid over to the several parties hereto in accordance with the findings, determination, and award of said arbitrators, any provision in said will to the contrary notwithstanding; and the said

county court shall, by suitable decree, enforce this agree-ment and see the same carried into effect.

"4. Said arbitrator shall fix a time and place for the hearing of the aforesaid matters, of which all parties hereto shall have ten days' notice, and shall hear and ex-amine all witnesses and evidence produced by any of the parties hereto and bearing upon the question herein sub-mitted, and upon consideration thereof shall make their award in writing and file the same with the clerk of the district court of Dodge county, Nebraska, within sixty days after the date of the delivery of this agreement to said arbitrators, who shall thereupon docket the same as provided by law. In case of the death, disability or re-fusal to serve of any one or the arbitrators herein named, the other two shall thereupon select a third who shall act in place of the one so failing to serve, and such selec-tion shall be as legal and binding upon all parties hereto as though the person so selected were named herein as one of said arbitrators. An award signed by two arbi-trators shall be as valid as though signed by all three.

"This being largely a family matter, and it being de-sirous to settle the same in an amicable manner and at as little expense as possible, it is agreed that none of the parties hereto shall employ, or be represented by, any at-torney at law or counselor before said arbitrators. All witnesses shall take an oath or affirmation to testify the truth, the whole truth and nothing but the truth, which same shall be administered by one of the arbitrators. None of the parties hereto shall be required to file any pleadings, claim or objections in writing before the ar-bitrators, but all claims and objections can there be made orally."

The three wills mentioned were attached to the agree-ment. That part of the award material to the present in-quiry is as follows:

"We find that a just and equitable distribution of the estate of John Monson, deceased, be made as follows, and is so awarded:

"First. It appears by testimony that the real estate in question was held in trust by John Monson for his son Mons Johnson, but that from *ex parte* evidence and personal knowledge of the arbitrators John Monson, deceased, did pay for 40 acres of the real estate in question. It is therefore ordered that title in fee simple be given to Mons Johnson to the south half (S. ½) of the southwest quarter (S. W. ¼), in section twenty-six (26) in township twenty (20) range eight (8) east containing 79 acres more or less.

"Second. That the northeast quarter (N. E. ¼) of the northwest quarter (N. W. ¼) in section thirty-five (35) township twenty (20) range eight (8) east is in fact part of the estate of John Monson, deceased.

"Third. We further order that the $1,400 bequeathed by the testator, John Monson, to Mons Johnson revert to the estate of John Monson, deceased, without interest, to be equally divided among the heirs.

"Fourth. That the executor erect a monument over the graves of John Monson and his wife, Elna Monson, the cost not to exceed $300.

"Fifth. That any heirloom found among the personal property of the said John Monson, deceased, be appraised at a fair value and sold to any one of the heirs that desires the possession thereof.

"Sixth. That the proceeds of the residue, after all debts and expenses have been paid, of the estate, both real and personal, of the said John Monson, deceased, be divided equally between Nels Johnson, Ola Johnson, Hannah Nelson, Mons Johnson and John Sampson, heirs of the said John Monson, deceased."

From a judgment entered on this award Nels Johnson, Ola Johnson, Hannah Johnson and John Sampson have appealed. Mons Johnson is appellee.

1. Appellants are asking to have the judgment on the award reversed for a number of reasons. The first is that the arbitrators failed to state the facts found and the conclusions of law, separately. The bases for this contention

seem to be: The arbitration was a statutory one. Code, secs. 862-879. The statutory rules governing referees apply to arbitrators. Code, sec. 867. Referees "must state the facts found and the conclusions of law, separately." Code, sec. 300. It is argued by appellants that these statutory requirements were disregarded. This question must be determined in the light of the general rule that every presumption is in favor of the award. *Sides v. Brendlinger,* 14 Neb. 491. The submission stated fully the matters to be determined, and the arbitrators found as follows, the distribution being omitted: "We find that a just and equitable distribution of the estate of John Monson, deceased, be made as follows."

"It appears by testimony that the real estate in question was held in trust by John Monson for his son Mons Johnson, but that from *ex parte* evidence and personal knowledge of the arbitrators John Monson, deceased, did pay for 40 acres of the real estate in question."

Arbitrators are not required to make their findings more certain than juries. *City of O'Neill v. Clark,* 57 Neb. 760. Failure of arbitrators to "state the facts found and the conclusions of law, separately," is a mere irregularity which the parties may waive. *Burkland v. Johnson,* 50 Neb. 858. In the present case the parties to the arbitration did not intend to require the arbitrators to conduct their inquiries or to make their findings in the formal or precise manner customary in cases where attorneys direct the proceedings and prepare the findings. This is shown by the agreement "that none of the parties hereto shall employ, or be represented by, any attorney at law or counselor before said arbitrators," and that "none of the parties hereto shall be required to file any pleadings, claim or objections in writing before the arbitrators." Appellants' first objection was: "The said award fails to state facts found and conclusions of law, separately." Knowing the contents of the award, they failed to ask the court to recommit it to the arbitrators for additional findings or corrections and therefore waived irregularities of that nature, if any. *State v. Graham,* 23 Neb. 68.

2. It is further argued that the arbitrators did not respond to material matters submitted to them. Under this head it said they failed to "consider and determine who furnished the money, or any part thereof, with which said real estate was purchased and paid for," and "why title to same was taken in John Monson." What shall be done with the real estate is stated in the award after this general finding: "It appears by testimony that the real estate in question was held in trust by John Monson for his son Mons Johnson, but that from *ex parte* evidence and personal knowledge of the arbitrators John Monson, deceased, did pay for 40 acres of the real estate in question."

For anything appearing in the transcript the arbitrators may have considered and determined who furnished the money with which the real estate was purchased and why the title was taken in the name of testator. The legal presumption is that the arbitrators considered all matters submitted to them. *Sides v. Brendlinger,* 14 Neb. 491. Special findings were not required by the terms of the submission. The bill of exceptions was quashed and there is nothing to show that special findings were orally requested. There was no motion to recommit the award for special findings. In this condition of the record the general finding will be held sufficient. *Sides v. Brendlinger,* 14 Neb. 491.

3. The next objection to the award is that "the arbitrators considered and reported upon matters not submitted to them," one being a direction to the executor to erect a monument over the grave of testator at an expense not exceeding $300. The will which the parties agreed should be probated and which was attached to the submission contained the following provision: "I direct that my executor hereinafter named, expend the sum of $500 or so much thereof as is necessary for the purpose of erecting a suitable monument over my grave in the cemetery."

Furthermore, the third paragraph of the submission authorized the arbitrators to determine what, in their

judgment, would be a fair, just and equitable division of the personal property belonging to testator's estate. The expenditure for the monument was fairly within the terms described. The arbitrators also directed "that any heir-loom found among the personal property of the said John Monson, deceased, be appraised at a fair value and sold to any one of the heirs that desires the possession thereof." This is another part of the award assailed as foreign to the submission, but it was a proper matter for consideration in determining what would be a fair, just and equitable division of the personal property.

4. Other reasons urged for a reversal are that the award is not sustained by the evidence and that the arbitrators were influenced by incompetent evidence. The record does not present these questions, the bill of exceptions having been quashed.

5. A reversal is sought by appellants on the ground that the third paragraph of the agreement of the parties submitted matters which could not be made the subject of arbitration. In this connection reference is made to language directing the arbitrators to determine whether the will offered for probate "provides for a fair, just and equitable disposition of the personal property and estate." This is denounced as an attempt to permit arbitrators to make a will for a deceased person and to distribute his estate thereunder, and it is contended that such matters could not be made the subject of a civil action and could not, therefore, be submitted to arbitrators. Code, sec. 862. For these reasons, appellants insist the arbitrators were without jurisdiction and that their award is void. The position is untenable. The words, "provides for a fair, just and equitable disposition of the personal property and estate," cannot be detached from the context for the purpose of determining the question submitted. A construction upholding the validity of the submission should be adopted, if consistent with the expressed intention of the parties, rather than an interpretation invalidating their agreement. The words quoted follow pro-

visions which show that the validity of the will offered for probate was in dispute, and that one of the parties to the arbitration claimed title to land which testator attempted to devise to others. Each of these controversies could have been made the subject of a civil action. The expression, "provides for a fair, just and equitable disposition of the personal property and estate," is followed by the words, "in view of all the facts and circumstances, and the rights and equities of said parties in the premises," and must be construed in connection with the submission as an entirety. The arbitrators understood they were not to make a will. The parties agreed that the will offered for probate should not be contested. Under it the property of which testator died seized vested in the parties to the arbitration. The disputed ownership of the land, the legal title to which was in testator, the validity of the will offered for probate, and the distribution of the entire estate of which testator died seized, in view of the agreement which prevented a contest, were subjects of civil actions and consequently of arbitration. These were matters submitted to the arbitrators and the agreement of the parties so indicates.

6. It is finally insisted that the award should be set aside as neither final nor complete for the reason it directs "that any heirloom found among the personal property of the said John Monson, deceased, be appraised at a fair value and sold to any one of the heirs that desires the possession thereof." As already held, this part of the award was within the submission. The duties of the arbitrators ended with the award. They were not required to settle up the estate. It is the duty of the executor to dispose of the heirlooms and to disburse the proceeds. There is no intimation in the record that this cannot be done finally according to the terms of the award.

No sufficient reason for a reversal having been suggested, the judgment is

AFFIRMED.