Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/20/2023 09:05 AM CST

- 259 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
313 NEBRASKA REPORTS
STATE v. NEBRASKA ASSN. OF PUB. EMPLOYEES
Cite as 313 Neb. 259

STATE OF NEBRASKA, DEPARTMENT OF HEALTH AND HUMAN
SERVICES, APPELLANT, V. NEBRASKA ASSOCIATION OF
PUBLIC EMPLOYEES, LOCAL #61 OF THE AMERICAN
FEDERATION OF STATE, COUNTY, AND
MUNICIPAL EMPLOYEES, APPELLEE.

___ N.W.2d ___

Filed January 20, 2023.    No. S-22-119.

1. **Arbitration and Award: Appeal and Error.** In reviewing a decision
to vacate, modify, or confirm an arbitration award, an appellate court is
obligated to reach a conclusion independent of the trial court's ruling as
to questions of law. However, the trial court's factual findings will not
be set aside on appeal unless clearly erroneous.

2. **Arbitration and Award.** The purpose of arbitration is the quick reso-
lution of disputes and the avoidance of the expense and delay associ-
ated with litigation. In serving that purpose, a court gives strong defer-
ence to the arbitrator because when parties agree to arbitration, they
agree to accept whatever reasonable uncertainties might arise from
the process.

3. ____. Under Nebraska's Uniform Arbitration Act, judicial review of an
arbitrator's award is severely circumscribed.

4. **Arbitration and Award: Proof.** Nebraska's Uniform Arbitration Act
provides very narrow grounds for vacating an arbitration award. Unless
a party proves an enumerated ground for vacating an arbitration award,
a court is required to confirm the award.

5. **Arbitration and Award.** Nebraska's Uniform Arbitration Act is to be
construed so as to effectuate its general purpose to make uniform the
law of the states which have enacted the act.

6. **Arbitration and Award: Contracts.** In determining whether an arbi-
trator exceeded his or her powers, a court's review is limited to
whether the awarded relief exceeded the limits of the arbitrator's pow-
ers as defined by the contract, including explicitly referenced materials
or documents.

- 260 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
313 NEBRASKA REPORTS
STATE v. NEBRASKA ASSN. OF PUB. EMPLOYEES
Cite as 313 Neb. 259

7. **Arbitration and Award: Contracts: Employer and Employee.** In the absence of a contrary contract provision, the provisions of Nebraska's Uniform Arbitration Act control arbitration agreements between employers and employees or between their respective representatives.

8. **Judgments: Parties.** If a party desired other or different findings, those findings should have been prepared and submitted, or at least the party should have made a request and noted an objection if refused.

9. **Parties: Appeal and Error.** A party cannot be heard to complain of an error that the party has been instrumental in bringing about.

10. **Arbitration and Award.** An arbitration award will not be vacated on grounds immaterial to the award.

Appeal from the District Court for Lancaster County: ROBERT R. OTTE, Judge. Affirmed.

Douglas J. Peterson, Attorney General, and Grant K. Dugdale, Special Assistant Attorney General, for appellant.

Dalton W. Tietjen, of Tietjen, Simon & Boyle, for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

HEAVICAN, C.J.

## INTRODUCTION

The State of Nebraska, Department of Health and Human Services (DHHS), appeals from an order of the district court denying DHHS' petition and application to vacate an arbitration award resulting from a labor dispute. DHHS sought vacatur of the award, averring the arbitrator exceeded his powers under DHHS' labor contract with the Nebraska Association of Public Employees, Local #61 of the American Federation of State, County, and Municipal Employees (NAPE). The district court denied DHHS' application and confirmed the award. We affirm.

## FACTUAL BACKGROUND

*Grievance Procedure of Labor Contract.*

The State of Nebraska and NAPE entered into a labor contract in April 2019, which was in effect at all times relevant to

- 261 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
313 NEBRASKA REPORTS
STATE v. NEBRASKA ASSN. OF PUB. EMPLOYEES
Cite as 313 Neb. 259

this appeal. DHHS is one of the state agencies bound by the labor contract. Article 4 of the contract provides for a grievance procedure whereby an aggrieved employee can raise allegations of any violations of the labor contract by DHHS.

In relevant part, the employee first must file a written complaint, which is required to contain a statement that indicates the issue involved, the relief sought, the date the alleged violation took place if known, and the specific sections of the labor contract involved. DHHS then has 15 workdays from the date it received the grievance to confer with the grievant-employee and issue a decision. Thereafter, the employee has the option to appeal DHHS' decision on the grievance and can elect to submit the appeal to voluntary binding arbitration.

Under the labor contract, the arbitrator's scope of review "shall be to determine" whether the terms of the labor contract have been violated and whether DHHS' action was taken in good faith and for cause. The arbitrator must decide the grievance based on the issues presented in the employee's written complaint. The arbitrator may interpret relevant provisions of the labor contract and apply them to the particular case. However, the arbitrator has no authority to add to, subtract from, or in any way modify the terms of the labor contract.

The labor contract also provides that the administrator of the Department of Administrative Services' employee relations division can set various time limitations for the arbitration process, including the period after a hearing within which an arbitrator must enter his or her decision. Otherwise, the decision of the arbitrator must be made within 60 calendar days of the conclusion of the hearing. The arbitrator's decision must be in writing and include "findings of fact and conclusions of law." "The findings of fact shall consist of a concise statement of the conclusions upon each contested issue of fact," and "[t]he decision of the arbitrator shall be final and may not be appealed."

- 262 -

Nebraska Supreme Court Advance Sheets
313 Nebraska Reports
STATE v. NEBRASKA ASSN. OF PUB. EMPLOYEES
Cite as 313 Neb. 259

*Labor Dispute.*

The basic facts surrounding the grievance were not in dispute at arbitration or on appeal. In sum, the employees, represented by NAPE, alleged that DHHS changed the dress code in violation of the labor contract.

DHHS' longstanding dress code was issued in October 2017. The 2017 dress code provided that employees' clothing must be consistent with the standards for a professional work environment and must be appropriate to the type of work being performed in accordance with the employee's particular work area. Under the 2017 dress code, administrators and managers were responsible for defining what is "appropriate" for the particular work areas under their direction. The possible definitions of "appropriate attire" included casual, business casual, or another style appropriate for the type of work the employee performed and the extent of the employee's contact with the public.

In December 2019, DHHS advised its employees of a new dress code that would take effect in 2020. The 2020 dress code included two substantive changes relevant to the parties' dispute: (1) it removed the discretion provided to administrators and managers to define appropriate attire, and (2) the possible definitions of appropriate attire no longer included "casual," requiring at least business casual attire. In so doing, the 2020 dress code explicitly declared blue jeans and denim, T-shirts and sweatshirts, and athletic shoes and gym shoes to be inappropriate attire. However, employees could wear these otherwise inappropriate clothing items on DHHS' newly adopted "Casual Fridays." The 2020 dress code was initially to go into effect beginning January 1, 2020, but for reasons not included in the record on appeal, the effective date was delayed to February 1.

On January 31, 2020, DHHS notified its employees that the 2020 dress code would not be going into effect on February 1 and that the 2017 dress code would remain in place. The record on appeal is devoid of the circumstances leading to

- 263 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
313 NEBRASKA REPORTS
STATE v. NEBRASKA ASSN. OF PUB. EMPLOYEES
Cite as 313 Neb. 259

this decision. On Friday, February 7, certain employees were informed by their supervisors that beginning on Monday, February 10, they would be required to wear business casual attire Monday through Thursday. These supervisors exercised their discretion under the still-in-effect 2017 dress code and redefined what is "appropriate" for the particular work areas under their direction. In particular, this February "dress code" provided that these affected employees would no longer be able to wear jeans, T-shirts, or sweatshirts as they had been previously. Although our review of the record shows that NAPE does not dispute that DHHS did not adopt a new departmentwide dress code, consistent with the record and for the sake of clarity, we refer to the newly defined "appropriate attire" for the affected employees as the "February dress code." In response, the affected employees filed a grievance.

*Employee Grievance.*

The grievance alleged that the February dress code violated articles 1.4 and 1.5 of the labor contract. Article 1.4 requires DHHS, "prior to making any change in terms and conditions of employment which are mandatory subjects of bargaining and not otherwise covered by this Contract, to meet and bargain with [NAPE] in an attempt to reach an agreement." The grievance alleged that DHHS' implementation of the February dress code violated article 1.4 because the changed definition of appropriate attire constituted a change in the terms or conditions of employment, which was a mandatory subject of bargaining, and because DHHS had not met to bargain with NAPE before implementing the February dress code.

Article 1.5 of the labor contract governs work rules, which "are defined as and limited to rules promulgated by [DHHS] within its discretion which regulate the job related personal conduct of employees." The article requires that "[n]ewly established work rules or amendments to existing work rules shall be reduced to writing and furnished to [NAPE] at least seven calendar days prior to the effective date of the rule."

- 264 -

Nebraska Supreme Court Advance Sheets
313 Nebraska Reports
STATE v. NEBRASKA ASSN. OF PUB. EMPLOYEES
Cite as 313 Neb. 259

The article also requires that DHHS "establish or amend work rules in a reasonable manner."

The grievance alleged that DHHS violated article 1.5 because the February dress code was neither reduced to writing nor furnished to NAPE 7 days in advance of its effective date. The grievance also alleged that DHHS violated article 1.5 because the February dress code was not established or amended in a reasonable manner. The grievance charged that the new requirements of the February dress code were unreasonable for two reasons: First, the February dress code was unreasonable due to the cost imposed on the affected employees by the change in the definition of appropriate attire, and second, the grievance contended that the February dress code was unreasonable because it did not take into account the type of work the affected employees performed, nor the extent of the employees' contact with the public. Specifically, the dress code was unreasonable because there was no need for the affected employees to be in business casual attire, since those employees do not interact with the general public. The grievance sought rescission of the February dress code to allow either the affected employees to be treated as they were before the change or DHHS to meet and bargain with NAPE.

*DHHS' Initial Decision.*

DHHS issued its initial decision on the grievance in March 2020, after the parties agreed to an extension for DHHS to respond. In its decision on the grievance, DHHS acknowledged the arguments raised in the grievance, but concluded that neither article 1.4 nor article 1.5 applied to the February dress code. DHHS determined that article 1.4 did not apply because the change in the definition of appropriate attire did not constitute a change in the terms and conditions of employment. Similarly, DHHS determined that article 1.5 did not apply because the February dress code was not a newly established or amended work rule. DHHS maintained that even if article 1.5 did apply, the change was reasonable and no violation occurred.

- 265 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
313 NEBRASKA REPORTS
STATE v. NEBRASKA ASSN. OF PUB. EMPLOYEES
Cite as 313 Neb. 259

DHHS viewed the February dress code exclusively as an exercise of supervisor discretion under the 2017 dress code. It was DHHS' position that article 3.12 applied to the February dress code. Article 3.12 provides that management has the "right to adopt, modify, change, enforce, or discontinue any existing rules, regulations, procedures or policies." DHHS categorized the grievance as an impermissible intrusion on that right. NAPE appealed DHHS' initial decision.

*Arbitration Hearing.*

NAPE exercised its election to submit the grievance to voluntary binding arbitration. The parties mutually selected an arbitrator according to a mutually agreed upon process. The arbitrator delivered the award and his written decision on October 9, 2020, 50 days after the conclusion of the hearings. The arbitrator's decision identified the issues presented by the grievance as follows: (1) DHHS failed to bargain on a mandatory subject of bargaining prior to initiating the February dress code, and (2) the February dress code was unreasonable and too expensive. The arbitrator then listed the witnesses who testified and the exhibits received at the arbitration proceeding. The arbitrator proceeded to recount the background events leading to the grievance and the parties' respective positions before stating his opinion. The decision concluded with the arbitrator's award.

In his award, the arbitrator found that DHHS violated article 1.4 by (1) failing to properly advise NAPE of a proposed change on subjects of mandated negotiation and bargaining and (2) failing to negotiate and bargain on those proposed changes. The arbitrator also found that DHHS violated article 1.5 by (1) failing to advise NAPE at least 7 calendar days in advance of the effective date of the proposed establishment of a newly established work rule or amendment to an existing work rule and (2) its "[a]rbitrary, capricious, unreasonable, and unfair implementation" of a newly established work rule or amendment to an existing work rule. The arbitrator

- 266 -

Nebraska Supreme Court Advance Sheets
313 Nebraska Reports
STATE v. NEBRASKA ASSN. OF PUB. EMPLOYEES
Cite as 313 Neb. 259

directed DHHS to reactivate the 2017 dress code within 30 days, allowing employees who do not interact with the public to wear casual attire, specifically jeans. At the end of the award, the arbitrator included the following: "The Arbitrator will retain jurisdiction over this award for an additional thirty (30) days after its implementation[.] The parties are encouraged to contact the Arbitrator, jointly, for questions having to do with interpretation or implementation of this award." The parties did not discuss jointly submitting questions to the arbitrator.

*DHHS' Application to Vacate Award.*

On November 10, 2020, 32 days after the award's delivery, DHHS filed an application with the district court to vacate the arbitrator's award on the grounds that the arbitrator "exceeded their powers" under Neb. Rev. Stat. § 25-2613(a)(3) (Reissue 2016). DHHS argued that the arbitrator exceeded his powers in two respects relevant to this appeal by (1) including insufficient findings of fact and conclusions of law in his decision in violation of article 4.7.11 of the labor agreement and (2) adding a substantive requirement to article 1.5 of the labor contract in violation of article 4.7.9.

Article 4.7.11 of the labor contract provides that an arbitrator's decision "shall include findings of fact and conclusions of law" and that the findings of fact "shall consist of a concise statement of the conclusions upon each contested issue of fact." DHHS contended that nothing in the arbitrator's decision could be "minimally considered" findings of fact and conclusions of law and that his decision failed to include a concise statement of his conclusions on each contested issue of fact.

The district court disagreed. The court reasoned that although the arbitrator did not expressly label each finding of fact, the arbitrator's decision nevertheless included findings of fact. For example, the court found that the arbitrator made findings of fact, including that the 2017 dress code included jeans as

- 267 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
313 NEBRASKA REPORTS
STATE v. NEBRASKA ASSN. OF PUB. EMPLOYEES
Cite as 313 Neb. 259

acceptable work attire, but the February dress code proscribed jeans; DHHS advised its employees that the 2017 dress code was reinstated; DHHS failed to provide 7 days' advance notice of the February dress code; DHHS failed to reduce the proposed change to writing as mandated by the labor contract; DHHS' rationale for disallowing jeans in the February dress code was to ensure the uniformity of dress and professionalism at the workplace; unaffected employees were allowed to wear jeans despite performing the same work, at the same location, and on the same shift as affected employees; the February dress code imposed different and more onerous standards on similarly situated employees; and the February dress code unfairly and unreasonably increased the cost and burden for affected employees but not for those unaffected.

The court also found that the arbitrator included concise statements of his conclusions on each contested issue of fact. In particular, the arbitrator stated he agreed with NAPE that the February dress code was ipso facto unreasonable because the dress code was not a select way of achieving either uniformity or fairness, which caused DHHS' implementation, or execution, of the dress code to be arbitrary and capricious. The court concluded that the arbitrator's decision sufficiently complied with article 4.7.11.

DHHS' second contention was that the arbitrator added a substantive limitation to article 1.5 when he determined that the February dress code was arbitrary, capricious, unreasonable, and unfair. The district court agreed with DHHS insofar as article 1.5 provides only procedural limitations, but found that the arbitrator did not add a substantive limitation as DHHS contended. The court disagreed with DHHS' characterization that the arbitrator found the February dress code itself was arbitrary, capricious, unreasonable, and unfair. Instead, the court found that the arbitrator had found the manner in which the February dress code was implemented was arbitrary, capricious, unreasonable, and unfair.

- 268 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
313 NEBRASKA REPORTS
STATE v. NEBRASKA ASSN. OF PUB. EMPLOYEES
Cite as 313 Neb. 259

The court reasoned that because article 1.5 provides that DHHS can "only establish or amend work rules in a reasonable manner," the arbitrator did not add a substantive limitation when he concluded that the February dress code was ipso facto unreasonable due to DHHS' arbitrary, capricious, unreasonable, and unfair implementation of the dress code. The court concluded that because the manner in which work rules are established or amended could be interpreted to include the implementation of the dress code, the arbitrator's conclusion was a permissible application of article 1.5. The district court denied DHHS' petition and confirmed the arbitration award. DHHS appeals.

## ASSIGNMENTS OF ERROR

DHHS assigns, restated, that the district court erred in concluding that the arbitrator did not exceed his powers by (1) finding that the arbitration decision included enough findings of fact and conclusions of law to comply with the labor contract and (2) finding that the arbitrator did not add to or modify the labor contract and therefore the arbitrator did not exceed his powers.

## STANDARD OF REVIEW

[1] In reviewing a decision to vacate, modify, or confirm an arbitration award, an appellate court is obligated to reach a conclusion independent of the trial court's ruling as to questions of law.[1] However, the trial court's factual findings will not be set aside on appeal unless clearly erroneous.[2]

## ANALYSIS

[2] The purpose of arbitration is the quick resolution of disputes and the avoidance of the expense and delay associated

---

[1] *Signal 88 v. Lyconic*, 310 Neb. 824, 969 N.W.2d 651 (2022).

[2] *Id.*

- 269 -

Nebraska Supreme Court Advance Sheets
313 Nebraska Reports
STATE v. NEBRASKA ASSN. OF PUB. EMPLOYEES
Cite as 313 Neb. 259

with litigation.[3] In serving that purpose, a court gives strong deference to the arbitrator because when parties agree to arbitration, they agree to accept whatever reasonable uncertainties might arise from the process.[4] Courts do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts.[5] A court may not overrule an arbitrator's decision simply because the court believes that its own interpretation of the contract, or the facts, would be the better one.[6] Arbitration is far different from adjudication.[7]

[3,4] Under Nebraska's Uniform Arbitration Act (NUAA),[8] judicial review of an arbitrator's award is severely circumscribed.[9] When parties agree to have an arbitrator resolve a dispute, the law provides little room for a court to undo the arbitrator's decision.[10] Section 25-2613(a) provides very narrow grounds for vacating an arbitration award, and unless DHHS proves an enumerated ground for vacating the award, the district court is required to confirm the award pursuant to § 25-2613(d). Both of DHHS' assignments of error argue that the district court failed to find that the arbitrator exceeded his powers under § 25-2613(a)(3).

---

[3] *Jones v. Summit Ltd. Partnership Five*, 262 Neb. 793, 635 N.W.2d 267 (2001).

[4] *Signal 88 v. Lyconic, supra* note 1.

[5] *City of Omaha v. Professional Firefighters Assn.*, 309 Neb. 918, 963 N.W.2d 1 (2021).

[6] *Id.*

[7] *Signal 88 v. Lyconic, supra* note 1.

[8] See Neb. Rev. Stat. §§ 25-2601 to 25-2622 (Reissue 2016 & Cum. Supp. 2022).

[9] *State v. Henderson*, 277 Neb. 240, 762 N.W.2d 1 (2009), *disapproved on other grounds, Seldin v. Estate of Silverman*, 305 Neb. 185, 939 N.W.2d 768 (2020).

[10] *City of Omaha v. Professional Firefighters Assn., supra* note 5.

- 270 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
313 NEBRASKA REPORTS
STATE v. NEBRASKA ASSN. OF PUB. EMPLOYEES
Cite as 313 Neb. 259

The parties agree that the standard for determining whether arbitrators exceeded their powers is governed by our decision in *City of Omaha v. Professional Firefighters Assn.*[11] There, we stated that in deciding whether an arbitrator exceeded his or her powers, the focus is, appropriately, on whether the arbitrator acted within the bounds of contractual authority because it is the parties' agreement from which the arbitrator's power derives. A court's task is limited to deciding whether the arbitrator (even arguably) adhered to contract interpretation in his or her decision.[12] With this standard in mind, we turn to DHHS' two assignments of error.

*Findings of Fact and Conclusions of Law.*

DHHS first assigns that the district court erred in finding that the arbitrator did not exceed his powers by delivering a decision that failed to include any, or sufficient, findings of fact and conclusions of law and failed to include a concise statement of his conclusions upon each contested issue of fact. It is DHHS' contention that arbitrators can exceed their powers in two ways. First, as related to the merits of an award, when the award exceeds the limitations of the arbitrator's powers placed upon him or her by the parties' arbitration agreement, and second, when the arbitrator fails to satisfy requirements imposed by the parties' negotiated agreement. DHHS argues that because article 4.7.9 of the labor contract imposed requirements as to the type of decision the arbitrator was to deliver, in failing to satisfy those requirements, the arbitrator exceeded his powers and the district court was required to vacate the award.

In support of its argument that an arbitrator exceeds his or her powers by failing to satisfy the parties' contractual requirements, DHHS relies exclusively on a Ninth Circuit

---

[11] *Id.*

[12] See *id.*

- 271 -

Nebraska Supreme Court Advance Sheets
313 Nebraska Reports
STATE v. NEBRASKA ASSN. OF PUB. EMPLOYEES
Cite as 313 Neb. 259

Court of Appeals opinion interpreting the Federal Arbitration Act (FAA).[13] In *Western Employers Ins. v. Jefferies & Co.*, the Ninth Circuit remanded an arbitration award with directions to vacate it for failing to include findings of fact and conclusions of law when the parties specifically negotiated for an award with findings of fact and conclusions of law, the party seeking vacatur made numerous requests of the arbitration panel for such findings and conclusions, and the panel expressly refused to issue anything other than a standard award declaring all issues were resolved in favor of the other party. We note that our review reveals that the Ninth Circuit may have subsequently and implicitly abrogated *Western Employers Ins. v. Jefferies & Co.* when it held that despite a requirement in the parties' arbitration agreement, the arbitrators' failure to issue a written decision with their award, alone, did not support vacatur under the limited grounds enumerated in the FAA.[14]

DHHS classifies the arbitrator's decision as a "reasoned award" rather than a decision with findings of fact and conclusions of law. DHHS, relying on a decision of the 11th Circuit Court of Appeals,[15] asserts that there are three principal types of arbitration awards: (1) a standard or bare award, which announces only in whose favor the arbitrator found; (2) a reasoned award; and (3) an award that includes findings of fact and conclusions of law. The distinction between these types of arbitration awards under the FAA, first articulated in an unpublished opinion from the northern district of Illinois, has been embraced by every U.S. Circuit Court of Appeals, including the

---

[13] See *Western Employers Ins. v. Jefferies & Co.*, 958 F.2d 258 (9th Cir. 1992). See, also, 9 U.S.C. § 10 (2018) ("where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made").

[14] See *Biller v. Toyota Motor Corp.*, 668 F.3d 655 (9th Cir. 2012) (citing *Bosack v. Soward*, 586 F.3d 1096 (9th Cir. 2009)).

[15] See *Cat Charter, LLC v. Schurtenberger*, 646 F.3d 836 (11th Cir. 2011).

- 272 -

Nebraska Supreme Court Advance Sheets
313 Nebraska Reports
STATE v. NEBRASKA ASSN. OF PUB. EMPLOYEES
Cite as 313 Neb. 259

11th Circuit.[16] In that case, the court noted that these awards are on a spectrum of increasingly reasoned awards. A "standard award" is the option least involving reasoning, and "findings of fact and conclusions of law" is the option most involving reasoning.[17] "Logically," the court rationalized, a reasoned award is "something short of findings and conclusions but more than a simple result."[18] Notably, that same court recognized that "it is very strange to assert that an arbitrator has *exceeded* his powers by not doing enough,"[19] as DHHS asserts here.

We have never considered whether a reasoned award is recognized under Nebraska law. The term "reasoned award" is not within the statutory language of the NUAA, although various Nebraska statutes have mandated requirements for findings of fact and conclusions of law.[20] In those contexts, we have stated that the principal motivating force is "'the need of the reviewing court for a clear view of the basis'" for the decision.[21] We have held that an administrative order is

---

[16] *ARCH Development Corp. v. Biomet, Inc.*, No. 02 C 9013, 2003 WL 21697742 (N.D. Ill. July 30, 2003). See *Holden v. Deloitte and Touche LLP*, 390 F. Supp. 2d 752 (N.D. Ill. 2005) (citing *ARCH Development Corp. v. Biomet, Inc., supra* note 16). See, also, *Sarofim v. Trust Company of the West*, 440 F.3d 213 (5th Cir. 2006) (citing *Holden v. Deloitte and Touche LLP, supra* note 16); *Cat Charter, LLC v. Schurtenberger, supra* note 15 (citing *Sarofim v. Trust Company of the West, supra* note 16); *Rain CII Carbon, LLC v. ConocoPhillips Co.*, 674 F.3d 469 (5th Cir. 2012) (citing *Sarofim v. Trust Company of the West, supra* note 16, and *Cat Charter, LLC v. Schurtenberger, supra* note 15); *Leeward Construction v. American Univ. of Antigua*, 826 F.3d 634 (2d Cir. 2016) (citing *Rain CII Carbon, LLC v. ConocoPhillips Co., supra* note 16); *Sabre GLBL, Inc. v. Shan*, 779 F. Appx. 843 (3d Cir. 2019) (citing *Leeward Construction v. American Univ. of Antigua, supra* note 16).

[17] *ARCH Development Corp. v. Biomet, Inc., supra* note 16.

[18] *Id.* at *4.

[19] *Id.* at *4 n.4. See *Holden v. Deloitte and Touche LLP, supra* note 16.

[20] See, Neb. Rev. Stat. § 77-5018(1) (Reissue 2018); Neb. Rev. Stat. § 84-915 (Reissue 2014).

[21] *County of Lancaster v. State Board of Equalization & Assessment*, 181 Neb. 738, 741, 150 N.W.2d 886, 888 (1967).

- 273 -

Nebraska Supreme Court Advance Sheets
313 Nebraska Reports
STATE v. NEBRASKA ASSN. OF PUB. EMPLOYEES
Cite as 313 Neb. 259

arbitrary when it contains findings that "fail to disclose a clear basis" for the order.[22] Even then, we have recognized that administrative findings may be express or implied.[23]

However, in contrast to those cases, courts do not sit to hear claims of factual or legal error by an arbitrator.[24] A court may not overrule an arbitrator's decision simply because the court believes that its own interpretation of the contract, or of the facts, would be the better one.[25] As has been mentioned, an arbitrator's award should be confirmed as long as it even arguably construes the contract.

[5] The NUAA is to be construed so as to effectuate its general purpose to make uniform the law of the states which have enacted the Uniform Arbitration Act.[26] When other states have interpreted their enacted versions of the Uniform Arbitration Act, they have taken a narrower approach in determining whether arbitrators exceeded their powers. Other states have generally held that arbitrators exceed their powers only when an award addresses issues or grants relief outside the scope of the governing contract.[27] In essence, because an

---

[22] *County of Box Butte v. State Board of Equalization & Assessment*, 181 Neb. 742, 744, 150 N.W.2d 892, 893 (1967).

[23] *Richardson v. City of Omaha*, 214 Neb. 97, 333 N.W.2d 656 (1983) (citing *County of Lancaster v. State Board of Equalization & Assessment, supra* note 21).

[24] *City of Omaha v. Professional Firefighters Assn., supra* note 5.

[25] *Id.*

[26] § 25-2622.

[27] See, e.g., *State Farm Mut. Auto. Ins. v. Cabs, Inc.*, 751 P.2d 61 (Colo. 1988); *Poire v. Kaplan*, 491 A.2d 529 (D.C. 1985); *Brennan v. Stewarts' Pharmacies, Ltd.*, 59 Haw. 207, 579 P.2d 673 (1978); *3D Enterprises v. Lexington-Fayette Urban*, 134 S.W.3d 558 (Ky. 2004); *Plymouth-Carver School Dist. v. J. Farmer*, 407 Mass. 1006, 553 N.E.2d 1284 (1990); *Health Plan of Nevada v. Rainbow Med.*, 120 Nev. 689, 100 P.3d 172 (2004); *Boyte v. Dickson*, 62 N.C. App. 682, 303 S.E.2d 418 (1983); *Batten v. Howell*, 300 S.C. 545, 389 S.E.2d 170 (S.C. App. 1990); *Arnold v. Morgan Keegan & Co., Inc.*, 914 S.W.2d 445 (Tenn. 1996). See, also, e.g., *Progressive Data v. Jefferson Randolph*, 275 Ga. 420, 568 S.E.2d 474 (2002); *Anderson v. Banks*, 37 A.3d 915 (Me. 2012).

- 274 -

Nebraska Supreme Court Advance Sheets
313 Nebraska Reports
STATE v. NEBRASKA ASSN. OF PUB. EMPLOYEES
Cite as 313 Neb. 259

arbitrator is charged with resolving the parties' dispute before him or her by interpreting the contractual rights of the parties, an arbitrator can only exceed his or her powers by making an award that violates the negotiated rights of the parties with respect to one another. Because a court does not revisit an arbitrator's factual findings or conclusions of law, a court's review is of the arbitrator's *award*, not the arbitrator's reasoning, explanation, decision, or the presence thereof.

This narrow interpretation is supported by looking at the grounds on which a court can modify or correct an award under the NUAA. Each ground for modification or correction is limited to the form of the award and precludes review of its merits:

> (1) There was an evident *miscalculation* of figures or an evident *mistake in the description* of any person, thing or property referred to in the award;
> (2) The arbitrators have awarded upon a matter not submitted to them and the award may be corrected *without affecting the merits* of the decision upon the issues submitted; or
> (3) The award is imperfect in a matter of form, *not affecting the merits* of the controversy.[28]

This section suggests that grounds as to form, just as grounds of mistake of law or mistake of fact, do not warrant the vacatur of an award.[29] We are persuaded by this approach taken by other states.

[6] We hold that in determining whether an arbitrator exceeded his or her powers, a court's review is limited to whether the awarded relief exceeded the limits of the arbitrator's powers as defined by the contract, including explicitly referenced materials or documents, and does not include, as DHHS asserts, whether the arbitrator somehow failed to meet a minimum requirement. As the Supreme Judicial Court of Massachusetts has aptly stated:

---

[28] § 25-2614(a) (emphasis supplied).

[29] *Id.*

- 275 -

Nebraska Supreme Court Advance Sheets
313 Nebraska Reports
STATE v. NEBRASKA ASSN. OF PUB. EMPLOYEES
Cite as 313 Neb. 259

"The question of interpretation of the agreement is for the arbitrator and mere ambiguity in the [arbitrator's] opinion is not a reason for refusing to enforce the award, even when it permits the inference of a want of authority." [Although] an arbitrator may not award damages beyond a limit clearly established by the contract, "the limiting boundaries . . . must be set forth with clarity, and the limiting words must be plain. If there is room for doubt or interpretation on the question, then the issue properly lies within the broad authority conferred upon arbitrators of civil disputes." . . . The interpretation of the contract was for the arbitrator.[30]

In the present case, under the labor contract, the arbitrator's scope of review was to determine whether the terms of the labor contract had been violated. In his award, the arbitrator determined that DHHS violated articles 1.4 and 1.5 based on the issues presented in the original employee complaint. DHHS does not challenge the remedy of the arbitrator's award. Although the parties may have contracted for a decision that included findings of fact and conclusions of law, it cannot be said that the arbitrator exceeded his powers or materially erred by failing to include sufficient detail in his accompanying decision. The award reflects that the arbitrator acted within the bounds of his contractual authority. As we previously stated, arbitration is far different from adjudication, and when parties agree to arbitration, they agree to accept whatever reasonable uncertainties might arise from the process.

We also note that DHHS had a number of remedies available to it other than filing an application to vacate the award with the district court. First, we see no reason why DHHS and NAPE could not have jointly submitted questions to the arbitrator as he invited. The labor contract does not provide express language that would preclude an arbitrator from

---

[30] *Plymouth-Carver School Dist. v. J. Farmer, supra* note 27, 407 Mass. at 1007-08, 553 N.E.2d at 1286.

- 276 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
313 NEBRASKA REPORTS
STATE v. NEBRASKA ASSN. OF PUB. EMPLOYEES
Cite as 313 Neb. 259

retaining authority or correcting or expanding on his or her award. It provides only a modifiable default rule when an arbitration decision needs to be delivered. DHHS asserts that the arbitrator did not retain any authority to include findings of fact and conclusions of law in his award after the award's delivery. But decisions of other courts suggest that the arbitrator did retain such authority.[31] Additionally, we see nothing in the labor contract that would prevent the parties from agreeing to modify the terms of the labor contract as they did when NAPE granted DHHS' request for an extension of time to issue its initial decision beyond the 15 days expressly provided by the labor contract.[32]

[7] Second, the NUAA "applies to arbitration agreements between employers and employees or between their respective representatives."[33] Although contract provisions agreed to by the parties control over contrary provisions of the NUAA,[34] in the absence of a contrary contract provision, the provisions of the NUAA control. Relevant to DHHS' circumstances, and unlike the FAA, the NUAA expressly provides a remedy for clarifying an award.[35] Section 25-2610 provides:

On application of a party[,] . . . the arbitrators may modify or correct the award . . . for the purpose of clarifying the award. The application shall be made within twenty days after delivery of the award to the applicant. Written notice thereof shall be given forthwith to the opposing party, stating he or she must serve his or her objections thereto, if any, within ten days from the notice. The award so modified or corrected is subject to

---

[31] See *Hartford Steam v. Underwriters at Lloyd's*, 271 Conn. 474, 857 A.2d 893 (2004) (discussing cases).

[32] See *Pennfield Oil Co. v. Winstrom*, 272 Neb. 219, 720 N.W.2d 886 (2006).

[33] § 25-2602.01(c).

[34] § 25-2602.01(d).

[35] See § 25-2610.

- 277 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
313 NEBRASKA REPORTS
STATE v. NEBRASKA ASSN. OF PUB. EMPLOYEES
Cite as 313 Neb. 259

[confirmation, vacatur, and modification or correction by a court as provided by other sections].

Under § 25-2610, DHHS had 20 days from the award's delivery to apply to the arbitrator for clarification of his award. DHHS made no such application. Section 25-2610 also provides that a court can submit an award back to an arbitrator when an application to the court is pending for confirmation, vacatur, or modification or correction. In this case, the district court did not err when it determined that clarification from the arbitrator was unnecessary.

[8,9] Finally, we note that it has long been the law of this State that in the judicial context, if a party desires a special finding of fact, the proper time to make such request is at the time of the submission of the case.[36] A party is not permitted to wait until the return of a verdict and then insist upon a different finding.[37] If a party desired other or different findings, those findings should have been prepared and submitted, or at least the party should have made a request and noted an objection if refused.[38] This court has long regarded it a sound principle, as well as a salutary one, that a party cannot be heard to complain of an error that the party has been instrumental in bringing about.[39] In this case, DHHS did not

---

[36] *Everson v. Graves*, 26 Neb. 262, 41 N.W. 994 (1889). See, also, Neb. Rev. Stat. §§ 25-1121 (Cum. Supp. 2022) and 25-1122 and 25-1127 (Reissue 2016).

[37] *Everson v. Graves, supra* note 36.

[38] See, *In re Arbitration of Johnson*, 87 Neb. 375, 127 N.W. 133 (1910); *Town v. Missouri P. R. Co.*, 50 Neb. 768, 70 N.W. 402 (1897).

[39] *Ballantyne v. Parriott*, 172 Neb. 215, 109 N.W.2d 164 (1961); *Missouri P. R. Co. v. Fox*, 60 Neb. 531, 83 N.W. 744 (1900), *overruled on other grounds, Callahan v. Prewitt*, 143 Neb. 787, 13 N.W.2d 660 (1944). See, *Scheele v. Rains*, 292 Neb. 974, 874 N.W.2d 867 (2016); *Evergreen Farms v. First Nat. Bank & Trust*, 250 Neb. 860, 553 N.W.2d 728 (1996); *Keating v. Klemish*, 214 Neb. 458, 334 N.W.2d 440 (1983); *Haumont v. Alexander*, 190 Neb. 637, 211 N.W.2d 119 (1973); *Grand Lodge v. Brand*, 29 Neb. 644, 46 N.W. 95 (1890).

- 278 -

Nebraska Supreme Court Advance Sheets
313 Nebraska Reports
STATE v. NEBRASKA ASSN. OF PUB. EMPLOYEES
Cite as 313 Neb. 259

prepare and submit any proposed findings to the arbitrator, made no specific request of the arbitrator for findings, and did not note an objection. Instead, DHHS filed an application to vacate the arbitrator's award 32 days after he delivered it. Whatever insufficiency exists in the findings of fact and conclusions of law,[40] DHHS was instrumental in bringing about that insufficiency.

*Adding Substantive Requirement to Labor Contract.*

DHHS next assigns that the district court erred by finding that the arbitrator did not add to or modify the labor contract and concluding that the arbitrator did not exceed his powers. DHHS argues that the arbitrator violated article 4.7.9 in excess of his powers in making his award. That article limits the arbitrator's powers by providing that "the arbitrator shall have no authority to add to, subtract from, or in any way modify the terms of this Contract or any agreements made supplementary hereto."

DHHS contends that the arbitrator added a substantive requirement to article 1.5 of the labor contract because the article contains only procedural requirements. The relevant provision of article 1.5 provides that "[t]he employer agrees to only establish or amend work rules *in a reasonable manner*." At the arbitration hearing, NAPE argued that when DHHS unilaterally implemented a rule that required negotiation under article 1.4, it simultaneously violated article 1.5 because any policy that is random, arbitrary, and capricious in its implementation is, by its very nature, unreasonable. In his award, the arbitrator concluded that DHHS violated article 1.5 in its "[a]rbitrary, capricious, unreasonable, and unfair implementation of [a] new rule or amendment."

---

[40] Compare *Western Employers Ins. v. Jefferies & Co., supra* note 13, with *Biller v. Toyota Motor Corp., supra* note 14. See, e.g., *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557 (7th Cir. 2008); *Holden v. Deloitte and Touche LLP, supra* note 16 (citing *ARCH Development Corp. v. Biomet, Inc., supra* note 16).

- 279 -

Nebraska Supreme Court Advance Sheets
313 Nebraska Reports
STATE v. NEBRASKA ASSN. OF PUB. EMPLOYEES
Cite as 313 Neb. 259

As we have noted, our task is limited to deciding whether the arbitrator even arguably adhered to contract interpretation in his decision. The labor contract mandates that DHHS only establish or amend work rules in a reasonable manner. The word "manner" can be defined as a "mode of procedure,"[41] while something "[n]ot guided by reason" is termed "unreasonable."[42] Accordingly, it is an arguable interpretation of article 1.5 that the article requires DHHS' procedures in establishing or amending work rules to be guided by reason.

Implicit in the arbitrator's decision is that the February dress code constituted a work rule and a term and condition of employment subject to mandatory negotiation and bargaining with NAPE. It is an arguable interpretation that redefining "appropriate attire" for the affected employees could serve as both. It is also an arguable interpretation that by failing to negotiate and bargain with NAPE in violation of article 1.4, DHHS' procedure, or implementation, was not guided by reason. Likewise, since article 1.5 requires that a rule be reduced to writing and furnished to NAPE at least 7 calendar days before its effective date, by failing to reduce the February dress code to writing and furnishing it to NAPE, DHHS' procedure could arguably be interpreted as not being guided by reason.

[10] Moreover, DHHS' second assignment of error is immaterial to the award,[43] and an arbitration award will not be vacated on grounds immaterial to the award. Under the labor contract, the arbitrator's scope of review was to determine whether the terms of the labor contract had been violated and whether DHHS' action was taken in good faith and for cause based on the issues presented in the employees' written

---

[41] "Manner," Merriam-Webster.com, https://www.merriam-webster.com/dictionary/manner (last visited Jan. 10, 2023).

[42] Black's Law Dictionary 1851 (11th ed. 2019).

[43] See, e.g., *Detroit Auto. Inter-Ins. Exch. v. Gavin*, 416 Mich. 407, 331 N.W.2d 418 (1982).

- 280 -

NEBRASKA SUPREME COURT ADVANCE SHEETS
313 NEBRASKA REPORTS
STATE v. NEBRASKA ASSN. OF PUB. EMPLOYEES
Cite as 313 Neb. 259

complaint. The grievance alleged a violation of article 1.5, which required DHHS to provide NAPE with written notice at least 7 calendar days prior to the effective date of any newly established or amended work rules. Because the arbitrator found that DHHS violated article 1.5 on this ground, it is immaterial whether the arbitrator added a substantive requirement to article 1.5 and we need not consider DHHS' second assignment. The arbitrator was well within his powers in fashioning his remedy.[44]

## CONCLUSION

The district court did not err by denying DHHS' application to vacate the arbitration award and by confirming the arbitrator's award.

AFFIRMED.

---

[44] See, e.g., *M.K. Weeden Constr. v. Simbeck & Associates*, 409 Mont. 305, 514 P.3d 401 (2022); *Wells v. Wells-Wilson*, 360 Ga. App. 646, 860 S.E.2d 185 (2021); *Treadwell v. Village Homes of Colo., Inc.*, 222 P.3d 398 (Colo. App. 2009); *Vermont Built, Inc. v. Krolick*, 185 Vt. 139, 969 A.2d 80 (2008); *Progressive Data v. Jefferson Randolph, supra* note 27. See, also, § 25-2622.